LULU M. GEER, Respondent, v. UNION MUTUAL LIFE INSURANCE COMPANY, Appellant. (Actions 1 and 2.)

Argued December 3, 1936; decided March 9, 1937.

*Jerome K. Cheney* for appellant. It is entirely reasonable that the insurer should ask for and be entitled to receive full and complete information about specific diseases and ailments previously suffered by the applicant, about the number of times within a specified period the

applicant has consulted a physician and the ailment which occasioned the consultation and the facts about any hospital treatment the applicant may have received. The nature of such inquiries establish their materiality. Such pertinent facts are material to the risk and to the life insurance contract. (*Anderson* v. *Ætna Life Ins. Co.*, 265 N. Y. 376; *Keck* v. *Metropolitan Life Ins. Co.*, 238 App. Div. 538; 264 N. Y. 422; *Jenkins* v. *John Hancock Mut. Life Ins. Co.*, 257 N. Y. 289; *Minsker* v. *John Hancock Mut. Life Ins. Co.*, 254 N. Y. 333; *Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63; *Saad* v. *New York Life Ins. Co.*, 201 App. Div. 544; 235 N. Y. 550; *Samson* v. *Metropolitan Life Ins. Co.*, 290 N. Y. Supp. 161; *New York Life Ins. Co.* v. *Breen*, 242 App. Div. 453; *Schrader* v. *John Hancock Mut. Life Ins. Co.*, 232 App. Div. 644; *Klapholtz* v. *New York Life Ins. Co.*, 218 App. Div. 695; *Grubiak* v. *John Hancock Mut. Life Ins. Co.*, 212 App. Div. 126; *Gretsinger* v. *Metropolitan Life Ins. Co.*, 206 App. Div. 766; *Tunnard* v. *Supreme Council, Royal Arcanum*, 201 App. Div. 746.) A material misrepresentation voids the policy although innocently made. (*E. D. P. Dye Works* v. *Travelers Ins. Co.*, 234 N. Y. 441.)

*George R. Fearon, Henry R. Follett* and *M. Harold Dwyer* for respondent. The question as to whether the alleged misrepresentations contained in the applications were material to the risk was properly submitted to the jury. (*Nowak* v. *Brotherhood of American Yeomen*, 249 N. Y. 78; *E. D. P. Dye Works* v. *Travelers Ins. Co.*, 234 N. Y. 441; *Krauza* v. *Golden Seal Assurance Society*, 221 App. Div. 380; 247 N. Y. 536; *Cushman* v. *United States Life Ins. Co.*, 70 N. Y. 72; *Keck* v. *Metropolitan Life Ins. Co.*, 238 App. Div. 538; 264 N. Y. 422; *Minsker* v. *John Hancock Mut. Life Ins. Co.*, 254 N. Y. 333; *Anderson* v. *Ætna Life Ins. Co.*, 241 App. Div. 792; 265 N. Y. 376; *Saad* v. *New York Life Ins. Co.*, 201 App. Div. 544; 235 N. Y. 550; *Klapholtz* v. *N. Y. Life Ins. Co.*, 218 App. Div. 695; *Grubiak* v. *John Hancock Mut. Life

*Ins. Co.*, 212 App. Div. 126; *New York Life Ins. Co.* v. *Breen*, 242 App. Div. 453; *Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63; *Jenkins* v. *John Hancock Mut. Life Ins. Co.*, 257 N. Y. 289).

LEHMAN, J.  The decedent in his application for insurance answered " No " to the question: " Have you had any treatment within the last five years at any dispensary, hospital or sanitorium;" and in answer to the direction, " Give name and address of each physician consulted by you during the past ten years, and cause for consultation," the decedent stated: " Dr. N. G. Darling, 31 North State Street, Chicago, Ill., Nervousness."  The evidence shows that on October 4, 1928, the decedent visited Dr. Spire. Dr. Spire testified that according to notes made at that time, the decedent told him, " Returned from a long trip five days ago, had some coughing, felt bad the following day, took a laxative, has just a little hacking cough, his work takes him to large cities, has been nervous for the past six months, last April had influenza in Chicago. Has gained in weight past summer following that  *  *  * illness."  The physician examined the decedent at that time.  He had a temperature of 102°.  The physician treated him then but did not see him again till October 11th, one week later.  Dr. Spire then sent him to the Syracuse General Hospital where he remained till October 26th.  Dr. Spire diagnosed the decedent's ailment as para-typhoid and treated him for that ailment at the hospital, and after discharge from the hospital until December 17th, 1928, though the X-ray examination and the tests made at the hospital were negative and failed to show that the plaintiff was suffering from that disease.  The hospital record, under the heading " Past History," states in part: " Felt badly and coughed.  About Sept. 30/28 gradually became worse with no outstanding symptoms except cough and tired feeling.  Had influenza in April/28 from which he never fully recovered."  In 1932 the decedent again consulted Dr. Spire on two occa-

sions. Then Dr. Spire diagnosed his ailment as nervousness.

Section 58 of the Insurance Law (Cons. Laws, ch. 28) provides that " all statements purporting to be made by the insured [in an application attached to the policy of life insurance] shall in the absence of fraud be deemed representations and not warranties." The effect of the statute is that a " misstatement, even though stated in the form of a warranty, if made in good faith and without this element of fraud passed into the same class as an ordinary representation and became a defense to the policy only if it was material. On the other hand, the effect of a misrepresentation was left unchanged by the statute. If material it constituted a defense although made innocently and without any feature of fraud; it was sufficient that it was material as an inducement for the issue of the policy, and was untrue." (*Eastern District P. D. Works, Inc.*, v. *Travelers Ins. Co.*, 234 N. Y. 441, 449.) Here, though the evidence conclusively establishes that the decedent in his application failed to disclose that he had consulted Dr. Spire or had been treated at a hospital within five years of the date of the application, the court submitted to the jury the question whether the decedent had in his application made a material misrepresentation. The jury decided that no material misrepresentation was made. The question presented is whether, upon the evidence, it conclusively appears that there was a material misrepresentation.

A life insurance company is free to choose the risks which it will assume. An applicant for life insurance is required to answer certain questions which are prepared for the purpose of facilitating the examination and appraisal by the company of the insurability of the risk. In effect the company states to the applicant that the answers to those questions are intended to guide the company in deciding whether to accept or reject the application. By posing the question the insurer has

indicated "that it wanted to know the facts and that it intended and expected the applicant to speak the truth so that it might acquire information concerning them. Any misrepresentation which defeats or seriously interferes with the exercise of such a right cannot truly be said to be an immaterial one." (*Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63, 68.)

No method has been devised by which the processes of the human mind can be charted and the force of inducement mechanically measured. The materiality of a representation may then depend upon the idiosyncrasies or the individuality of the person who acts upon the representation, and often must be determined as a question of fact by the trier of the facts. Nevertheless at times, departure in a representation from an accurate statement of the truth may be so slight that we may confidently say that the difference could not affect decision of any reasonable person. Then as a matter of law the misrepresentation is not material. On the other hand, where an applicant for insurance has notice that before the insurance company will act upon the application, it demands that specified information shall be furnished for the purpose of enabling it to determine whether the risk should be accepted, any untrue representation, however innocent, which either by affirmation of an untruth or suppression of the truth, substantially thwarts the purpose for which the information is demanded and induces action which the insurance company might otherwise not have taken, is material as matter of law. The question in such case is not whether the insurance company might perhaps have decided to issue the policy even if it had been apprised of the truth, the question is whether failure to state the truth where there was duty to speak prevented the insurance company from exercising its choice of whether to accept or reject the application upon a disclosure of all the facts which might reasonably affect its choice. (*Jenkins* v. *John Hancock Mut. Life Ins. Co.*, 257 N. Y. 289. Cf.

*Keck* v. *Metropolitan Life Ins. Co.*, 238 App. Div. 538; affd., 264 N. Y. 422.)

That does not mean that every failure to disclose each occasion upon which the applicant has visited or consulted a physician constitutes a misrepresentation, material or otherwise. A reasonable construction of a question in an application blank which calls for information about consultations with physicians or about medical treatments, may limit the scope of the question to consultations or treatments for ailments which are not trivial and exclude the applicant's " visits for medical advice for such minor ills as constipation or common cold in the head, which are readily relieved by simple remedies and do not impair his general health." (*Jenkins* v. *John Hancock Mut. Life Ins. Co., supra,* p. 293. Cf. *Travelers Ins. Co.* v. *Pomerantz,* 246 N. Y. 63.) In such case the decision that failure to disclose a visit for medical advice creates no fatal infirmity in the policy of insurance thereafter issued rests upon construction of the application and determination that failure to disclose such a visit constitutes no suppression of the truth and, thus, no false representation that there had not been such a visit rather than upon determination that, though a false représentation was made it was not material. True, the test of whether the ailments, for which medical advice or treatment was sought, were trivial, may be decisive in either view of the question, and there may in most cases be no occasion to draw such distinctions. As Judge FINCH points out, an applicant may hardly be expected to remember each occasion upon which he sought medical advice for a trivial ailment which passed away leaving no permanent effect; and a question in an application blank may not reasonably be construed as calling for information, which the person to whom the question is posed could not be expected to remember. That proposition is self-evident. Equally clear is the proposition that a failure by the applicant to disclose a visit which the applicant could not reasonably be expected to remember could not

mislead the insurance company and, therefore, would not be a material misrepresentation. Thus in a case where the courts have held that the medical visit was for advice in regard to an ailment so trivial that an applicant was not called upon to remember or to give information concerning it, the courts have not always kept distinct, in word or thought, the grounds upon which failure to disclose information concerning medical visits might be regarded as inconsequential.

In this case the situtation is quite different. We have an admission or statement made by the decedent to a physician whom he consulted in October, 1928, that the previous April he had an attack of influenza from which, it appears, he had not at that time recovered. We have conclusive proof that at that time the decedent was sent to a hospital where he remained for two weeks; that his physician diagnosed the decedent's ailment as para-typhoid and continued to treat him for almost two months after his discharge from the hospital, and that shortly before he signed the application, the decedent twice consulted the same physician for a nervous condition. It is quite possible, as Judge FINCH says, that none of the ailments for which the decedent consulted physicians and received hospital treatment permanently affected the decedent's health or made him a less desirable insurance risk. Even so, it can certainly not be said that the applicant could not reasonably be expected to disclose information about such consultation or hospital treatment. By no possible construction of the questions in the application blank can it be said reasonably that the question did not call for such information. Hence failure to disclose information called for by the question constitutes a representation that there had been no such consultation or hospital treatment. (*Anderson* v. *Ætna Life Ins. Co.*, 265 N. Y. 376, and cases there cited.) Thus in this case the only question is whether the representation, though false, was material to the risk as matter of law.

In *Jenkins* v. *John Hancock Mut. Life Ins. Co. (supra,* p. 293) we said that the question plainly indicated that " the insurer wished to know the details of any professional treatment * * * in order to decide whether it would issue a policy. The insurer did not make this a trivial inquiry, limited to cases where the patient was kept from work by the malady. It was made material to the risk. The insurer so determined and it was not for the insured to pass it over as trifling." To sustain the judgment in this case we must hold that though the insured might not " pass it over as trifling " the jury might do so.

Any decision that a misrepresentation is not material must of course be based upon a holding, as question either of law or of fact, that the departure from the truth was not a factor which deprived a person of freedom of action and did not induce a choice which otherwise might not have been made. In no case which has been called to our attention has a court of this or other jurisdiction enforced a policy where information demanded by an insurance company " in order to decide whether it would issue a policy " and which might reasonably be considered a factor in arriving at a choice has been withheld. The question in such case is not whether the company *might have issued* the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application which it *might otherwise have refused.* " Any misrepresentation which defeats or seriously interferes with the exercise of such a right cannot truly be said to be an immaterial one." (*Travelers Ins. Co.* v. *Pomerantz, supra,* p. 68.) There we held that proof of the withholding of information concerning medical consultations, though called for by a question in an application blank, requires in the absence of denial or explanation a finding of material misrepresentation.

That case has been followed in a number of later cases. Attempt is made to distinguish those cases on the ground that in all those cases the plaintiff, seeking recovery upon the policy, by claim of privilege arising from the relation

of physician and patient, prevented the defendant from showing the nature of the ailment for which a physician was consulted, while here the plaintiff waived the privilege and invited disclosure. The fact that in those cases the plaintiff claimed the benefit of a privilege accorded by law, could, it is plain, not change the effect of a misrepresentation or shift the burden of showing that the misrepresentation was material. The only distinction, then, between those cases and the present case is that here the nature of the ailment is disclosed, while there it rested upon inference. The rule of law to be applied · is the same in both cases. That rule is that where an applicant for insurance withholds information called for by question in an application blank, concerning medical advice for ailments which are not "mere temporary disorders having no bearing upon general health the inquiry was not to be passed over as trivial. It was made material to the risk." (*Anderson* v. *Ætna Life Ins. Co.*, 265 N. Y. 376, 380.)

The salient features of the problem presented in this case are these: The insurance company did not agree that a jury might decide what risks the company should accept. It reserved that choice to itself, and in order to determine whether in a given case it should exercise that choice, it required certain information of each applicant. Here the applicant gave erroneous information, and the insurance company acted upon the information it received. If the truth had been disclosed it might prehaps have rejected the application or it might have accepted it. No person can say with any degree of certainty what action it would have taken, but it cannot be doubted that the erroneous statement deprived the company of its freedom of choice and that it acted upon a statement of facts which did not exist and if the truth had been disclosed, it might, reasonably, have acted differently. It follows then that the representation was material as matter of law.

Nothing said in this opinion should be construed as an approval of any argument that because the company by asking questions signifies that it will consider the answers in determining whether to issue the policy, it follows that any misrepresentation in the answer, however innocently made, is material as matter of law. To correct the misunderstanding apparent in the opinion of FINCH, J., I collate, though with new italics, what has been previously said on that point in this opinion. Misrepresentation in an answer, by affirmation of an untruth or by suppression of the truth, is material where it " *substantially* thwarts the purpose for which the information is demanded and *induces action which the insurance company might otherwise not have taken.*" The test is whether " failure to state the truth where there was duty to speak prevented the insurance company from exercising its choice of whether to accept or reject the application upon a disclosure of all the facts which might *reasonably* affect its choice." The question is " not whether the company *might have issued* the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application *which it might otherwise have refused.*"

There has never been any contention, dictum or decision in this court that if an insurance company evinces interest in the subject it thereby becomes material and no such contention is made in this opinion. The inquiry is " made material to the risk. The insurer so determined, and it was not for the insured to pass it over as trifling " (*Jenkins* v. *John Hancock Mut. Life Ins. Co.*, 257 N. Y. 289); but innocent failure to give true answer to the " material " inquiry is itself material only where it " *defeats* or *seriously* interferes with the exercise of such a right [*i. e.*, to accept or reject the application]." Such a misrepresentation cannot defeat or seriously affect the insurance company's right to reject the application where a disclosure of all the facts could not " reasonably " affect the choice of the insurer. Thus though the formulation of the test is somewhat different from that

approved in *Penn Mut. Life Ins. Co.* v. *Mechanics' Sav. Bank & Trust Co.* (72 Fed. Rep. 413) and *Mutual Life Ins. Co.* v. *Ontario Metal Products Co.*, ([1925] App. Cas. 344), the test is essentially the same. Under each test materiality is a matter of degree and a misrepresentation through concealment of a fact in regard to a condition of health or physicians consulted, is material where it appears that a reasonable insurer would be induced by the misrepresentation to take action which he might not have taken if the truth had been disclosed.

In *Mutual Life Ins. Co.* v. *Ontario Metal Products Co.* (*supra*), which is said to be precisely in point, it appeared that the misrepresentation consisted in failure to disclose treatment for a temporary disorder which was not a disease, did not cause the applicant to lose a single day of work and was due only to overwork or lack of exercise. As said earlier in this opinion, the rule in this State is that where an applicant for insurance withholds information called for by questions in an application blank concerning medical advice for ailments which are not " mere temporary disorders, having no bearing upon general health the inquiry was not to be passed over as trivial. It was made material to the risk." (*Anderson* v. *Ætna Life Ins. Co.*, *supra.*) In all the cases cited in the opinion of FINCH, J., or in the brief of the respondents, the misrepresentation either did not refer to health or medical treatment, or referred to " mere temporary disorders having no bearing upon general health." None of them are inconsistent with what was said in the *Anderson* case or is said in this opinion.

The judgments should be reversed and the complaints dismissed, with costs in all courts.

FINCH, J. (dissenting). The decedent, George H. Geer, applied for and obtained from the defendant two life insurance policies in 1932. His application contained the following questions and answers, photostatic copies of which were attached to the policies:

" 5. Have you ever had, or been told by a physician you had — (underline any disease had)
* * * * * * *

" B. Cough or Hoarseness (Chronic or Persistent), Asthma, Spitting of Blood, Pleurisy, Pneumonia, or any Disease of the Respiratory Organs?
" B. No.
* * * * * * *

" D. Diarrhoea, Dysentery, Dyspepsia (chronic), Jaundice, Liver Disease, Colic (severe), Gallstones, Fistula, Peritonitis, Ulcer of stomach or bowel, or any disease of the Abdominal Organs?
" D. No.
* * * * * * *

" M. Have you had any treatment within the last five years at any dispensary, hospital or sanatorium? If yes, give dates, duration, name of ailment and name of institution.
" M. No. Right mastiodictomy — 9 yr. ago — Syr. Memorial Hospital — complete recovery few weeks. Dr. T. H. Halstead, Syracuse, N. Y.
* * * * * * *

" Give name and address of each physician consulted by you during the past ten years, and cause for consultation. Dr. N. G. Darling, 31 North State St. Chicago, Ill. Nervousness."

The policies contained a two-year incontestable clause but before the expiration of the period the insured died as the result of inhaling carbon monoxide gas. The plaintiff, the beneficiary under the policies, brought actions upon them. The insurance company set up as a defense that the insured had had consultations with physicians which were not revealed in the application. The plaintiff waived her right to claim the physician-patient privilege and permitted the introduction of evidence of such consultations with physicians and on her own behalf introduced evidence to show that in 1932 the insured had twice consulted a Dr. Spire at his home

and the doctor had diagnosed the malady as mere nervousness; that in 1928 he had visited Dr. Spire and that at that time the doctor thought the insured had paratyphoid and sent him to a hospital; that an X-ray and other tests were taken but the results were negative and that the hospital charts do not show symptoms of paratyphoid; that in the course of his 1928 visit the insured had told Dr. Spire that he had had influenza during the previous year.

The trial court submitted to the jury the question whether the omissions from the answers in the application were material to the risk. The jury returned a verdict in favor of the plaintiff. The County Court and the Appellate Division have affirmed the judgment entered thereon and the Appellate Division has granted leave to appeal to this court.

The appellant maintains that the omissions in the answer are material as a matter of law and that, therefore, the complaint should have been dismissed.

Section 58 of the Insurance Law (Cons. Laws, ch. 28) provides that unless a copy of the application is attached to the policy it shall not be incorporated therein by reference and that all statements purporting to be made by the insured although attached to the policy shall in the absence of fraud be deemed representations and not warranties. A false warranty *ipso facto* vitiates the policy whether or not it is material. (See *Eastern District P. D. Works, Inc.,* v. *Travelers Ins. Co.,* 234 N. Y. 441, 449; 63 A. L. R. 846.) It is argued, however, that any omission in an answer to a question concerning consultation with physicians is material as a matter of law. Such a rule would lead to manifest injustice. Under it a policy could be vitiated because the insured had forgotten a visit to the doctor many years earlier for the treatment of a slight cold, or failed to disclose a consultation with a physician which had revealed that the insured was in good health. Unless the insured kept a detailed diary or journal he

would never be certain that a casual visit to a physician might not be availed of to set his policy aside. Nor does the rule contended for by the defendant accord with the law of decided cases. Omissions or misrepresentations concerning health or visits to 'a physician are not conclusively presumed to be material except under special circumstances. (4 Couch, Cyclopedia of Insurance Law, § 885-e; 4 Cooley's Briefs on the Law of Insurance [2d ed.], pp. 3301, 3394 *et seq.; Genung* v. *Metropolitan Life Ins. Co.*, 60 App. Div. 424; *Higbie* v. *Guardian Mutual Life Ins. Co.*, 53 N. Y. 603; *Murphy* v. *Union Central Life Ins. Co.*, 255 N. Y. 617; *Eastern District P. D. Works, Inc.*, v. *Travelers Ins. Co.*, 234 N. Y. 441; *Nowak* v. *Brotherhood of American Yeomen*, 249 N. Y. 78.) Thus in *Jenkins* v. *John Hancock Mut. Life Ins. Co.* (257 N. Y. 289, at p. 293), this court said: " It is a strict but humane ruling that when the insurer asks the applicant to say merely whether he has consulted a physician for any disease or disorder not enumerated in the list, the insured, if in good health at the time, need not recall his visits for medical advice for such minor ills as constipation or common cold in the head, which are readily relieved by simple remedies and do not impair his general health." Similarly in *Travelers Ins. Co.* v. *Pomerantz* (246 N. Y. 63, at p. 68) this court said: " The words ' deformity ' or ' infirmity ' as used in connection with applications for insurance are, of course, construed to mean deformities or infirmities of such a substantial character as, *if known*, would have been liable to deter an insurer from issuing a policy. (*Eastern District P. D. Works, Inc.*, v. *Travelers Ins. Co.*, 234 N. Y. 441, 453, 454.) The same principle must be true respecting medical or surgical attention. The attention to which reference is made in statement 12 must be not for a trivial indisposition but for some substantial illness, sickness, injury or disease. * * *."

It is argued that where an insurance company by specific questions requests information, any untrue representation or concealment in the answer, however innocent, is

material as a matter of law, and that the test is not whether the insurance company would have issued the policy if it had been apprised of the truth, but whether it had an opportunity to exercise its choice upon a disclosure of all the facts. The cases in which it has been held that failure to mention colds or other minor ailments did not vitiate the policy properly are based, it is asserted, not on the theory that the misrepresentation was material, but on the ground that the questions were not intended to elicit such information.

To restate the contention, as I understand it, it is this: An insurance company is entitled to exercise its will freely in determining whether to issue an insurance policy, that for this reason it may ask questions in its application blank; that by asking these questions, it signifies that it will consider the answers in determining whether to issue the policy; and that, therefore, any misrepresentation in the answer, however innocently made, is material as a matter of law. Just how far does this go? Suppose the application should ask the insured whether he had ever suffered from a common cold. By asking the question, has it made the answer material as a matter of law? Or suppose the question concerning consultation with physicians concludes with the phrase " whether concerning a cold or any ailment no matter how slight." Surely it could not be argued that such a question was not intended to elicit answers concerning common colds, constipation or other minor ailments. The answer, therefore, would be material as a matter of law.

Section 58 of the Insurance Law bars such a ruling. It was enacted for the benefit of the insured, and expressly provides that statements in an insurance policy " shall in the absence of fraud be deemed representations and not warranties." A misrepresentation, as noted above, does not invalidate a policy unless it is material. It is argued that merely by asking a specific question, the

insurance company can make the answer thereto material. This would enable insurance companies to destroy completely the efficacy of section 58. By asking specific questions, they could change in effect the replies which the statute states shall be deemed representations into warranties.

The contention that answers to questions in the application concerning health are material as a matter of law, is based upon the theory that if an insurance company evinces interest in the subject it thereby becomes material. That is not the true test. To use the words of Judge, later Chief Justice, TAFT, "A fair test of the materiality of a fact is found, therefore, in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against." (*Penn Mut. Life Ins. Co.* v. *Mechanics Sav. Bank & Trust Co.*, 72 Fed. Rep. 413, at p. 429.) Cases there are which have applied other tests, but the test quoted is supported, it is submitted, by the better reasoned authorities. (*Ward* v. *Standard Acc. Ins. Co.*, 30 Fed. Rep. [2d] 328; *Miller* v. *Maryland Casualty Co.*, 193 Fed. Rep. 343; *Goff* v. *Mutual Life Ins. Co.*, 131 La. 98; *McCaffrey* v. *Knights & Ladies of Columbia*, 213 Penn. St. 609; *Howell* v. *American Nat. Ins. Co.*, 189 N. C. 212; *Lee* v. *Metropolitan Life Ins. Co.*, 158 Ga. 517; *Etter* v. *National Life & Acc. Ins. Co.*, 228 Ky. 399; *Standard Acc. Ins. Co.* v. *Walker*, 127 Va. 140. See *Eastern District P. D. Works, Inc.*, v. *Travelers Ins. Co.*, 234 N. Y. 441, 453; *Columbia Ins. Co.* v. *Lawrence*, 35 U. S. [10 Pet.] 507, 516, per STORY, J.; *McLanahan* v. *Universal Ins. Co.*, 26 U. S. [1 Pet.] 170; *Hancock* v. *Knights of Security*, 303 Ill. 66, 71; *Mutual Benefit Life Ins. Co.* v. *Miller*, 39 Ind. 475, 486; 3 Joyce on The Law of Insurance [2d ed.], § 1892; 4 Couch, Cyclopedia of Insurance Law, § 829. See, also, *N. Y. Firemen Ins. Co.* v. *Walden*, 12 Johns. 513, per Chancellor KENT.)

The Judicial Committee of the Privy Council recently has had occasion to pass on a case precisely in point. That case arose in the Province of Ontario, which at that time had a statute equivalent to our section 58. The language of the opinion in *Mutual Life Ins. Co. v. Ontario Metal Products Co.* ([1925] App. Cas. 344), a case in which the insured failed to state that he had consulted a doctor who had prescribed hypodermic injections of a tonic and that such hypodermic injections had been made at the doctor's office irregularly over a period of three years, is so apposite that I quote at length: " The main difference of judicial opinion centers round the question what is the test of materiality? MIGNAULT, J., thought that the test is not what the insurers would have done but for the misrepresentation or concealment, but ' what any reasonable man would have considered material to tell them when the questions were put to the insured.' Their Lordships are unable to assent to this definition. It is the insurers who propound the questions stated in the application form, and the materiality or otherwise of a misrepresentation or concealment must be considered in relation to their acceptance of the risk. On the other hand, it was argued that the test of materiality is to be determined by reference to the questions; that the Insurance Company had by putting the question shown that it was important for them to know whether the proposer had been in the hands of a medical man within five years of his application, and, if so, to have had the opportunity of interviewing such medical man before accepting the risk. The question was therefore, they contended, a material one, and the failure to answer it truthfully avoids the contract. Now if this were the true test to be applied there would be no appreciable difference between a policy of insurance subject to s. 156 of the Ontario Insurance Act, and one in the form hitherto usual in the United Kingdom. All of the questions may be presumed to be of importance to the insurer who causes them to be put, and any inaccuracy, however unimportant in the answers, would, in this view,

avoid the policy. Suppose, for example, that the insured had consulted a doctor for a headache or a cold on a single occasion and had concealed or forgotten the fact, could such a concealment be regarded as material to the contract? Faced with a difficulty of this kind, the appellants' counsel frankly conceded that materiality must always be a question of degree, and therefore to be determined by the Court, and suggested that the test was whether, if the fact concealed had been disclosed, the insurers would have acted differently, either by declining the risk at the proposed premium or at least by delaying consideration of its acceptance until they had consulted Dr. Fierheller. If the former proposition were established in the sense that a reasonable insurer would have so acted, materiality would, their Lordships think, be established, but not in the latter if the difference of action would have been delay and delay alone. In their view, *it is a question of fact in each case whether, if the matters concealed or misrepresented had been truly disclosed, they would, on a fair consideration of the evidence, have influenced a reasonable insurer to decline the risk or to have stipulated for a higher premium* " (pp. 350, 351, 352). (Italics interpolated.)

The defendant relies upon several cases containing language which, when taken out of its context, seems to support the argument that all misrepresentations or omissions concerning health and consultations with physicians are material as a matter of law. An examination of these cases reveals that they involve special circumstances which readily distinguish them, and that the language contained in them is not intended to cover all cases of misrepresentation or omission.

In *Minsker* v. *John Hancock Mut. Life Ins. Co.* (254 N. Y. 333) the insured answered in the negative questions asking whether he had been treated in a hospital or other institution. The insurance company showed that actually he did receive medical advice on three different occasions

within a few months before the application was signed, and that he had been ill and attended a clinic. Thereupon counsel for the petitioner, relying upon the privilege granted by section 352 of the Civil Practice Act, objected to the admission of evidence concerning the illnesses or diseases for the treatment of which the physicians had been consulted. This court concluded that where it is shown that the insured had had consultations with physicians which he failed to reveal in his application, and the beneficiary refuses to permit the admission of evidence concerning the maladies treated, the omission is material as a matter of law. The same question was involved in *Travelers Ins. Co.* v. *Pomerantz* (246 N. Y. 63). In that case it was pointed out that the insurance company had produced evidence sufficient to show that the facts concerning which the misrepresentations were made were such as, if fully known, might have deterred it from accepting the insured as a risk. Once it was shown that the insured had failed to disclose that he had consulted physicians, and the privilege arising from his relation to his physicians was asserted whereby the insurance company was prevented from disclosing the diagnoses and nature of the treatment, the plaintiff could not be heard to claim that a *prima facie* case of materiality had not been made out. The cases of *Anderson* v. *Ætna Life Ins. Co.* (265 N. Y. 376) and *Keck* v. *Metropolitan Life Ins. Co.* (238 App. Div. 538; affd., 264 N. Y. 422) also involved a refusal to waive privilege on the part of the beneficiary or the insured. Obviously the courts could not permit the insured or the beneficiary to argue that the omission or misrepresentation was not material while he prevented the insurance company from showing its materiality. Statements in *Nowak* v. *Brotherhood of American Yeomen* (252 N. Y. 465) were dicta intended to allude to the situation just discussed.

In the case at bar the plaintiff waived the privilege and permitted the admission of all evidence concerning the consultations of the insured with the physician. The

question of materiality under such circumstances must be considered and the evidence analyzed. It must be dealt with upon the trial as is any other question of fact. The evidence might reveal that the insured was suffering from some disease of so serious a nature that the court could decide as a matter of law that it was material. It might be shown that the omission was of a condition so trivial as to justify holding as a matter of law that it was not material. Or the evidence might reveal that the ailment fell within that intermediate zone between materiality and immateriality which would make the question one of fact for the jury. (4 Couch, Cyclopedia of Insurance Law, § 885e; 4 Cooley's Briefs on the Law of Insurance [2d ed.], pp. 3301, 3394 *et seq.;* 3 Joyce on Insurance [2d ed.], § 1898; *Sebring* v. *Fidelity-Phenix Fire Ins. Co.,* 255 N. Y. 382; *Genung* v. *Metropolitan Life Ins. Co.,* 60 App. Div. 424; *Miller* v. *Maryland Casualty Co.,* 193 Fed. Rep. 343. See *Maryland Ins. Co.* v. *Rugan's Admr.,* 10 U. S. [6 Cranch] 338, per MARSHALL, Ch. J.)

Are the ailments revealed in the case at bar of such a serious nature that it must be held as a matter of law that they are material? It does not seem to me that they are. There was no direct proof that the insured had ever had influenza. There was merely the statement by the doctor that the insured had told him that he had suffered from the disease. In addition, the record contains evidence that except during an epidemic period, influenza is merely a severe cold and there is no showing upon this record that it amounted to more than the latter. Nor is it material as a matter of law that the insured mistakenly thought he was ill and consulted a doctor and it turned out to be merely nervousness. As to the para-typhoid, Dr. Spire stated that he thought the insured had para-typhoid. The tests taken, however, returned a negative result and the symptoms shown by the hospital charts do not reveal para-typhoid. A jury might very well find that the insured never suffered from that disease. More-

over, para-typhoid does not seem to be a serious disease, there apparently never having been a case of mortality therefrom. It is submitted that the trial judge properly submitted the question of materiality to the jury.

The judgments in favor of the plaintiff should be affirmed, with costs.

CRANE, Ch. J., O'BRIEN, HUBBS and LOUGHRAN, JJ., concur with LEHMAN, J.; FINCH, J., dissents in opinion in which RIPPEY, J., concurs.

Judgments reversed, etc.