SYRACUSE HOUSING AUTHORITY, Landlord, *v.* MARY COLGIOVANNI, Tenant. █

Municipal Court of Syracuse, May 25, 1945.

*William L. Kennedy* for landlord.

*Marvin, Hand, Searl, Bush & Crannage* for tenant.

McCLUSKY, J. This is a summary proceeding brought to recover possession upon the ground of fraud in the original renting.

The Syracuse Housing Authority is a corporate entity created under and by virtue of the State Housing Law of 1926, and which continues to operate under and in accordance with the provisions of the Public Housing Law. As such it has erected in the southeastern part of the city a series of buildings, comprising 678 dwelling units known as " Pioneer Homes." This project was erected as a low-cost rental project through funds secured from bonds and notes sold to private agencies and the United States Government through its appropriate instrumentality. It has opened the project and operated it for several years. The landlord has entered into an agreement with the Federal Public Housing Authority setting forth in detail the manner in which the project shall be operated by the landlord,

but there is no proof that the tenant ever knew about this resolution, although the low rent for low income families is well and generally known. The necessary resolutions, etc., have all been filed with the appropriate State department.

It appears that tenancy eligibility is determined by the number in the family, and the net income from the members of the family. The procedure was and is for the proposed tenant to make out an application containing data relative to the applicant and signed by the applicant. The handwriting is usually that of one of the landlord's employees. The application of course was devised and printed by the authority. There is no express warranty or guarantee in this application. In fact at the very end just before the subscription appears two printed lines as follows: " I understand that this is not a contract and does not bind either party. The above information is correct to the best of my knowledge. I have no objection to inquiries for the purpose of verifying the facts herein stated." But there are a number of questions relative to income. Among the powers granted to a housing authority by section 37 of the Public Housing Law is the right to lease and to sue and be sued.

On or about August 1, 1944, the tenant went to the downtown office of the landlord to seek quarters for herself and her small son. Her husband was in the armed forces and is presently in Germany. She herself and her infant son lived with her parents on Nelson Street. She signed an application previously described but gave her occupation as that of housewife and that she received an allowance from the United States of $80 per month. It might be well to note in passing that the Government largess is not subject to execution, claims, judgments or assignments of any nature except claims due to the United States. She was actually working at the time from 3:00 P.M. to 11:00 P.M. at the New Process Gear Co. Subsequently and on or about September 15, 1944, the tenant signed a lease of Apartment A, 101 Dyer Court, from October 1st for month to month. In February, 1945, she was called in to make a report for the year previous as to her income, as provided in the lease. She then disclosed that during the year she had actually earned by her employment a gross sum of $1,316.64 and $960 allowance from the United States, and further that she knew that it was wrong at the time she made the application and did it in order to get in the project. This is claimed to have been a material misrepresentation and as such should be sufficient grounds for the cancellation of the lease. This proceeding is brought on notice in writing duly given to terminate the tenancy

upon the ground of a violation of a substantial provision of the lease.

Unquestionably there was a contribution from a public source in the sum of $960 less the allotment from her husband. Likewise it is concededly true that she was employed outside the home earning a wage which brought her gross, and so far as it appears her net, income above the maximum limits of the rental price. It is true that she did not state in her application that she had another source of income. The application in and of itself was not a warranty.

The lease, subsequently executed, however, makes the statements contained in the lease material representations. The situation thus becomes analogous to the statements made in an application for life insurance, which by statute are deemed to be representations and not warranties (see Insurance Law, § 142, subd. 3). The distinction between a warranty and a representation goes to the question of materiality of the statement made. Accordingly in the case at bar the statements made must be material, i.e., they must have been of such a nature as to substantially thwart the purpose for which the information was sought and induced action upon the part of the authority that it would not otherwise have taken. (*Geer* v. *Union Mutual Life Ins. Co.*, 273 N. Y. 261.) Of course if departure from accurate statement of truth is so slight that the difference would not affect decision of any reasonable person it is not material. (*Geer* v. *Union Mutual Life Ins. Co.*, 273 N. Y. 261, *supra.*) Here we have a suppression of information with reference to income. The amount concerning which information was withheld is approximately 50% greater than the amount reported. Had this information been correctly stated the tenant would never have been allowed in the premises as a tenant. Her gross as well as net income would be several hundred dollars in excess of the maximum income admission standard. The authority was induced to rent the apartment to her. It relied on the statements and they were material and the misrepresentation vitiated the whole contract. It was of such a nature as to substantially and continuously affect the whole contract.

This proceeding is brought under paragraph (3) of subdivision (a) of section 6 of the Rent Regulation for Housing (10 Federal Register 3436, 3441). As the court interprets paragraph (1) of subdivision (b) of section 6, a certificate of the Rent Administrator was not necessary. The evidence offered shows that the tenant has ceased work since the notice to vacate was served upon her, and that her only income is her

Government allotment. It is urged that this is a compliance with the regulation and is, therefore, a remedy potent enough to defeat the claim of the landlord. The tenant secured her lease by a fraud; this fraud continued until after March 30, 1945. It is one of such nature as to vitiate the whole contract and, therefore, cannot be corrected by the unilateral act of the offending party. This court holds that the landlord has brought this proceeding under the proper section and the defense is not sufficient in law.

Order granted by warrant suspended for ten days from date of entry of order.