ALBERT VANDER VEER, II, Respondent, *v.* CONTINENTAL CASUALTY COMPANY, Appellant.

Third Department, August 2, 1973.

*Arthur E. McCormick* (*Earl S. Jones, Jr.,* of counsel), for appellant.

*Cooper, Erving & Savage* (*Harry S. Christenson* of counsel), for respondent.

STALEY, JR., J. P. This is an appeal (1) from a judgment of the Supreme Court, entered September 12, 1972 in Albany County, upon a verdict rendered at a Trial Term in favor of plaintiff, and (2) from an order of said court, entered October 5, 1972, which denied defendant's motion to set aside the verdict.

This is an action to recover payments for total disability under the provisions of Plan A in a group accident and health insurance policy issued by defendant. Plan A provided an indemnity of $1,000 per month. Defendant has refused to make payments under Plan A alleging that plaintiff misrepresented the condition of his health and failed to reveal that he suffered from paroxysmal atrial fibrillation and cardiac abnormality in response to a specific question in the application for coverage, and that, if he had revealed the condition, defendant would not have issued the policy.

On a prior appeal, this court held that questions of fact existed as to whether plaintiff misrepresented the condition of his health, as well as the materiality of any such misrepresentation, and denied plaintiff's motion for summary judgment under Plan A (*Vander Veer* v. *Continental Cas. Co.,* 30 A D 2d 506). After a trial before a jury, a verdict was rendered in favor of plaintiff, and defendant has appealed from the judgment rendered on that verdict. On the trial, the court charged the jury that it must determine two factual issues: first, whether plaintiff misrepresented the condition of his health and the medical treatment he had had, and whether knowledge of the facts would have led defendant to refuse to issue the policy of insurance.

We find that two issues of fact were presented at the trial for jury determination, namely, whether plaintiff made any misrepresentation as to his health and, if so, did the misrepresentation materially affect the acceptance of the risk by defendant.

On the application dated January 27, 1963, plaintiff stated that, to the best of his knowledge, he was in good health and free from any physical impairment or disease. In response to a question requesting details relative to medical advice or treatment for various disorders which included the cardiovascular system, plaintiff listed six episodes of illness, all of which had a duration of one week or more. Defendant bases its refusal to pay under Plan A on an allegation that plaintiff suffered "from cardiac abnormality and on January 19, 1962 was treated for paroxysmal atrial fibrillation" and that he had episodes of the same since adolescence.

Plaintiff testified that, on January 19, 1962, he visited his physician, Dr. Guest, complaining of feeling faint and having palpitations. An electrocardiogram revealed an irregular heart, and his condition was diagnosed as atrial fibrillation. Plaintiff denied that he ever had or had given any history of having episodes of paroxysmal atrial fibrillation since adolescence. He returned to work on January 19, 1962 after the visit to Dr. Guest, and performed his normal duties and continued in active practice of surgery until the accident on October 3, 1964. As an aftermath of the accident, plaintiff had a massive pulmonary embolism which resulted in his total disability.

Dr. Guest testified that he had taken electrocardiograms of plaintiff in 1959 and 1960 which were normal. His diagnosis of plaintiff's condition on January 19, 1962 was atrial fibrillation which was functional and not organic, and that there was no disease of the heart.

Dr. Guest prescribed quinidine three times a day which plaintiff continued to take after the January 19, 1962 episode. Dr. Guest took a subsequent electrocardiogram on February 22, 1962 which was normal, and he expressed his opinion that the irregularity of plaintiff's heart on January 19, 1962 was an isolated episode. Dr. Guest further testified that his statement in the report that plaintiff had episodes of paroxysmal atrial fibrillation since adolescence was erroneous. Dr. Guest's conclusion was that plaintiff's heart was benign, and that he had no heart disease. He further testified in response to the question "Was anything wrong with the top part or auricle of Dr. Vander Veer's heart" that there was no disease of it. In a report dated July 12, 1965, Dr. Guest stated that he examined

plaintiff on February 21, 1962 and March 3, 1962, and that "at these times he had normal sinus rhythm".

Dr. Joseph T. Doyle, the head of the Division of Cardiology at the Albany Medical College and the Albany Medical Center Hospital, testified that he had examined the electrocardiograms taken in 1959, on January 19, 1962, and February 22, 1962; that the January 19 electrocardiogram showed atrial fibrillation, but no other abnormality; and both the earlier and subsequent ones were entirely normal. After reading the hospital records relative to plaintiff's hospitalization after his accident on October 3, 1964 in response to a hypothetical question, Dr. Doyle expressed the opinion that plaintiff's heart was normal at that time. He further testified that he had never treated plaintiff.

Defendant presented one witness, Mr. Schager, the chief underwriter for the Association Group Division handling the accident and health coverages for the defendant. He testified that if plaintiff's fibrillation incident had been disclosed, the policy insuring plaintiff under Plan A would not have been issued. However, he also testified that defendant's underwriting manual, which was in evidence as an exhibit, was the guide used to determine whether or not policies would be issued, and that the reason plaintiff would have been rejected was based on the manual. Mr. Schager stated that the applicable portion of the manual was the item "arrythmia". There are two types set forth in the manual: (1) sinus—the type caused by normal reaction; and (2) total—this means something wrong with the top part of the heart, the auricle, producing fibrillation flutter. Mr. Schager testified that the word sinus or normal rhythm was "the type caused by normal reactions, and that type of a risk is acceptable." As to the total type, he testified that if there had been one acute attack and a complete recovery for three years, it was then an acceptable risk. Plaintiff would have been rejected under the total category. Mr. Schager further testified that the sinus part or benign type of heart condition was acceptable. The medical testimony indicates that plaintiff's heart was normal and his isolated episode was of this benign type.

In *Piccininni* v. *Aetna Life Ins. Co.* (250 App. Div. 498, 499), the court stated: "In our opinion, it was a question of fact for the jury to determine whether the false statement in the application for the policy materially affected either the acceptance of the risk or the hazard assumed by the insurer." (See, also, *Giuliani* v. *Metropolitan Life Ins. Co.*, 269 App. Div. 376; *Tierney* v. *Travelers Ins. Co.*, 179 Misc. 604, affd. 267 App. Div. 804; Insurance Law, § 149.)

On the basis of the evidence, it is impossible to agree with the contention that the verdict is against the weight of the evidence, and, as a matter of law, that the alleged misrepresentation was material. On the contrary, the question of the alleged misrepresentation and the materiality thereof were questions of fact and solely within the province of the jury to decide. The jury's verdict in favor of plaintiff is completely supported by the record and should be affirmed.

The judgment and order should be affirmed, with costs.

REYNOLDS, J. (dissenting). The general verdict returned here makes it impossible to determine whether the jury, in fact, found that there was no misrepresentation or that any misrepresentation was not material. As will be shown, there is no question that plaintiff, in fact, misrepresented his health as a matter of law and thus, since the jury's verdict could be predicated on an unsupportable conclusion that no misrepresentation existed, even without reaching the question of materiality, at the very least, the verdict must be set aside and a new trial ordered at which a special verdict or a general verdict with special findings should be submitted to the jury (CPLR 4111; *Hartnett* v. *Home Life Ins. Co.*, 18 A D 2d 281, 284). However, in our opinion, this is not necessary since we find as to the question of whether the misrepresentation was material the verdict is against the weight of the credible evidence and, indeed, was material as a matter of law (*Geer* v. *Union Mut. Life Ins. Co.*, 273 N. Y. 261; *Anderson* v. *Aetna Life Ins. Co.*, 265 N. Y. 376; *Wageman* v. *Metropolitan Life Ins. Co.*, 24 A D 2d 67, affd. 18 N Y 2d 777). Thus, the judgment should be reversed and the complaint dismissed.

There is no question that plaintiff, in fact, misrepresented the status of his health, and no one on this court contends otherwise. There is, in fact, no serious contention by the plaintiff here, and could be none, that there was no misrepresentation. A specific question in the application for insurance sought to elicit from the plaintiff whether or not he " had any medical advice or treatment for or had any of the following: *Disorder* of the * * * cardiovascular * * * system " (emphasis added), and he did not list the condition here involved. We are dealing here with a doctor, not a layman, and he disclosed in his answer certain past illnesses, but did not reveal his cardiac abnormality even though it was the only condition for which he was taking medicine regularly at the time of the signing of the application.

It is admitted that he had consulted a Dr. Guest on January 19, 1962 who testified that "At that time Dr. Vander Veer appeared in my office feeling faint and complaining of palpitations and so I did an electrocardiogram and it demonstrated that he *had a totally irregular heart called atrial fibrillation* ". (Emphasis added.) He prescribed quinidine three times a day and it is admitted that plaintiff had been taking same for a year prior to the application. Plaintiff's own physician, Dr. Doyle, gave the following answer to a question as to whether there was anything wrong with the top part of the doctor's heart, "By paroxysmal atrial fibrillation is meant a functional *disorder* which may occur in the absence of anatomically demonstrable disease." (Emphasis added.) The record further shows that in May, 1959 this plaintiff had electrocardiograms, X rays of the heart and cardiac fluoroscopy and in February, 1960 X rays of his heart and electrocardiograms.

The issue of materiality involves the question of whether defendant, with knowledge of the true facts, might decline the risk and refuse to undertake the coverage claimed. Defendant's chief underwriter testified flatly that had the true facts been known, company policy would have dictated rejecting plaintiff's application either because he had suffered episodes of paroxysmal atrial fibrillation for years or second, because he had suffered one acute attack and had not been off medicine for three years since the attack. No reading of the evidence can contradict either basis for the defendant's claim of materiality and, therefore, the case must be reversed and the complaint dismissed.

There is documentary evidence in the record first in the attending physician's history, and secondly in his report to the defendant in May of 1965 that plaintiff had had this condition "since adolescence". In the attending physician's records appears the following "Paroxysmal auricular flutter for years" and the 1965 report states that, "Dr. Vander Veer gave a history of having had episodes of paroxysmal atrial fibrillation since adolescence." Plaintiff denies this and the attending physician, a close social friend and golfing partner of the plaintiff, at the trial suddenly and without explanation reversed himself and claimed that this was not so despite the fact that it was definitely set forth in his records and again in his report.

Moreover, there is unquestioned evidence in the record that in addition to the 1962 attack, the plaintiff had at least one other known attack post-operatively at St. Peter's Hospital during his confinement there. And there is no question that plain-

tiff suffered an acute attack and was still taking quinidine to control the atrial fibrillation at the time he filed his application for coverage. It, of course, would be difficult if not impossible for the defendant to discover episodes in addition to the two revealed in the record, but the record would clearly infer that such may well have occurred. In any event, the claim of the 1962 attack being an isolated episode just is not so.

The majority would affirm the jury's verdict on the ground that the jury could find that there was no heart disease, that the heart was "normal", that his condition was "benign" and that he thus had "sinus" type arrhythmia which the company manual shows that it would have accepted. As to the absence of heart disease, what the doctors did not clearly say was that paroxysmal atrial fibrillation has a definite systemic cause whether discovered or not (it does not fall from the sky); but they did testify that usually paroxysmal atrial fibrillation is caused by heart disease and any other cause is exceptional, and a first year medical student knows that the most common causes are coronary artery disease, rheumatic mitral valvular disease and hyperthyroidism. But there are other systemic causes and there is no showing on the record that there was any investigation as to the cause except electrocardiograms and X rays of the heart and an opinion by the attending physician, "I feel it was functional" (functional means the disturbance of an organ's function) and that as far as they went they could demonstrate no organic heart disease. That means only that, on their limited study, it could not be associated with observable or detectable changes in the organ (the heart) which led to their statement that they found no heart disease. There is, also, not one shred of medical testimony in the record that plaintiff's condition was "sinus arrhythmia", rather it is abundantly clear that there was something wrong with the top part of the doctor's heart which is the manual description of total arrhythmia. The plaintiff's doctors did not and would not dare to testify that this was a sinus arrhythmia, despite their close friendship with plaintiff, because the symptoms and electrocardiogram tracings, pulse action and heart rhythm of sinus arrhythmia are as different as night and day from that of paroxysmal atrial fibrillation which was present. There is no contention here by plaintiff that he was suffering from sinus arrhythmia. As to the contention that the heart was "normal", the following question was asked of Dr. Guest as to the atrial fibrillation: "Q. It's not normal, is it? A. No, it's not normal" and of Dr. Doyle: "Q. Now, would you agree or dis-

agree that this type of atrial fibrillation is a cardiac abnormality? A. Yes."

Moreover, the test is not whether with hindsight the company might conceivably have issued the policy but whether if it had known the facts which it should have had it might reasonably have rejected the policy. In the leading case of *Geer* v. *Union Mut. Life Ins. Co.* (273 N. Y. 261, *supra*), the Trial Judge submitted to the jury the question whether decedent had made a material misrepresentation and the jury found that he had not. The Court of Appeals reversed and dismissed the complaint, saying (p. 270) : " The salient features of the problem presented in this case are these: The insurance company did not agree that a jury might decide what risks the company should accept. It reserved that choice to itself, and in order to determine whether in a given case it should exercise that choice, it required certain information of each applicant. Here the applicant gave erroneous information, and the insurance company acted upon the information it received. If the truth had been disclosed it might prehaps [*sic*] have rejected the appplication or it might have accepted it. No person can say with any degree of certainty what action it would have taken, but it cannot be doubted that the erroneous statement deprived the company of its freedom of choice and that it acted upon a statement of facts which did not exist and if the truth had been disclosed, it might, reasonably, have acted differently. It follows then that the representation was material as matter of law."

The court further stated (p. 271) : " Misrepresentation in an answer, by affirmation of an untruth or by suppression of the truth, is material where it ' *substantially* thwarts the purpose for which the information is demanded and *induces action which the insurance company might otherwise not have taken.*' The test is whether ' failure to state the truth where there was duty to speak prevented the insurance company from exercising its choice of whether to accept or reject the application upon a disclosure of all the facts which might *reasonably* affect its choice.' The question is 'not whether the company *might have issued* the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application *which it might otherwise have refused.*' " (Emphasis in original.)

In the case of *New York Life Ins. Co.* v. *Miller* (17 Misc 2d 532, 533), the court (PECK, J. former P. J. of the App. Div., 1st Dept.) said: " The questionnaire in the application is for the purpose of informing the insurance company on matter

which it regards as material in passing upon the risk. The insurance company is entitled to form and follow its own judgment as to risks and to know all the facts which may reasonably affect its judgment. Where, therefore, the applicant fails to give truthful answers to the questionnaire, the court may not, upon a subsequent disclosure, substitute its judgment of the risk for the judgment of the insurance company, or indulge its opinion of what the insurance company would have done had the disclosure been complete in the first place. The court should protect the insured against an arbitrary cancellation of the policy, but it must also protect the insurance company against a deprivation of the right to exercise its own judgment.'' and (p. 534): '' It seems clear that an insurance company is entitled to know and weigh for itself any condition which indicates cardial impairment. The heart condition of this defendant, which the plaintiff was prevented from learning by the defendant's failure to disclose her visit to a physician may not be dismissed as minor or insignificant. It might well and reasonably have affected the judgment of the company as to its assumption of the risk. The failure of the defendant to make the disclosure is, therefore, ground for canceling the policy.''

There can be no question on the instant record that, if the defendant had known the truth about the plaintiff's condition, it could well have rejected the policy and that such rejection would have been reasonable. In addition, at the very least, the defendant lost its chance to have a medical examination or to conduct further inquiry (see *Anderson* v. *Aetna Life Ins. Co.,* 265 N. Y. 376, 381, *supra*). A representation as to one's health and as to physicians employed is material. '' A truthful answer might have been followed with a medical examination or further inquiry.'' (*Jenkins* v. *John Hancock Mut. Life Ins. Co.,* 257 N. Y. 289, 293.)

There is no merit in plaintiff's assertion that our previous decision in this case precludes a determination that there was a material misrepresentation as a matter of law since the proof on the trial was not the same as that submitted on the motion for summary judgment (*Jenks* v. *McGranaghan,* 37 A D 2d 638, affd. 30 N Y 2d 475).

Accordingly, the jury's verdict should be set aside and the complaint dismissed.

GREENBLOTT and COOKE, JJ., concur with STALEY, JR., J. P.; KANE and REYNOLDS, JJ., dissent and vote to reverse in an opinion by REYNOLDS, J.

Judgment and order affirmed, with costs.