NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2045
_____

MUNICH REINSURANCE AMERICA, INC.

v.

AMERICAN NATIONAL INSURANCE COMPANY,

Appellant

_____

On Appeal from United States District Court
for the District of New Jersey
(D.C. No. 3-09-cv-06435)
(District Judge: Hon. Freda L. Wolfson)
_____

Argued December 10, 2014
Before:  FUENTES, FISHER and KRAUSE, *Circuit Judges*.

(Filed: February 3, 2015)

Joel M. Eads, Esq.
Trenk, DiPasquale, Webster, Della, Fera & Sodono, P.C.
32 Parking Plaza
Suite 402, The Times Building
Ardmore, PA 19003

Andrew J. Mytelka, Esq.,  ***ARGUED***
Greer, Herz & Adams
One Moody Plaza
18th Floor
Galveston, TX 77550

Angela Olalde, Esq.
Greer, Herz & Adams
2525 South Shore Boulevard
Suite 203
League City, TX 77573

Counsel for Appellant

Paul M. Hummer, Esq., **ARGUED**
Amy S. Kline, Esq.
Sean T. O'Neill, Esq.
Saul Ewing
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102

Counsel for Appellee

---

OPINION[*]

---

FISHER, *Circuit Judge*.

Appellee Munich Reinsurance America, Inc. ("Munich"), provided reinsurance coverage to a workers compensation insurer. Acting through an independent underwriter, Appellant American National Insurance Co. ("ANICO") agreed to reinsure part of Munich's coverage. ANICO's and Munich's relationship broke down, and Munich ultimately sued ANICO for breach of contract. ANICO counterclaimed to rescind their reinsurance contracts on the basis that Munich did not provide ANICO with all material

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

information about the underlying workers compensation insurer. After a bench trial, the District Court entered judgment in Munich's favor on its breach of contract claim and ANICO's rescission counterclaim. We will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

Everest National Insurance Co. ("Everest") is a workers compensation insurer. Beginning in 1997, Everest and Munich entered into a reinsurance relationship. For workers compensation claims made to Everest between $250,000 and $1,000,000, Munich agreed to pay Everest's obligations under the program less $250,000, known as the "750 excess of 250" layer.[1] Munich sought out its own reinsurance for the Everest program. Munich entered into an agreement with Continental Casualty Insurance Co. ("Continental"), in which for claims made to Everest between $500,000 and $1,000,000, Continental agreed to pay Everest's obligations under the program less $500,000, known as the "500 excess of 500" layer. An independent underwriter, IOA Re, Inc. ("IOA"), represented Continental each time Munich and Continental renewed the reinsurance contract.

---

[1] For claims that exceeded $1,000,000, Munich's total payment was capped at $750,000.

3

Under this contractual scheme, Everest would cover the first $250,000 of every claim against its workers compensation insurance. If the claim exceeded $250,000, Munich would cover the next $250,000 of the claim. And if the claim exceeded $500,000, Continental would cover the next $500,000 of the claim.

In late 2000, IOA told Munich that IOA did not underwrite coverage for Continental anymore and suggested replacing Continental with ANICO. Munich gave IOA the same underwriting files that Munich received from Everest. IOA analyzed those underwriting files and eventually agreed on ANICO's behalf (1) to reinsure the "500 excess of 500" layer in part during the last two months of the year 2000 and (2) to reinsure the layer in its entirety in 2001. However, Munich had not provided IOA with information about its own losses, its relationship with Everest, certain unreported but expected claims, the break-even price Munich calculated for the layer, a claims audit of a new claims agent joining the Everest program, and the rate Munich charged Everest.

Eventually, Munich's and ANICO's relationship broke down. In December 2009, Munich sued ANICO for breach of contract. ANICO counterclaimed to rescind the 2000 and 2001 reinsurance contracts. ANICO claimed that Munich breached the duty of utmost good faith that Munich owed ANICO by withholding material information from ANICO. The District Court held a bench trial on the parties' claims. On February 27, 2014, the District Court issued an opinion finding that ANICO breached the parties' contracts and that ANICO was not entitled to rescind the contract. *Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, 999 F. Supp. 2d 690, 761-62 (D.N.J. 2014). The District

4

Court found that Munich had not breached its duty of utmost good faith because, although Munich withheld some information from ANICO, that information was not material to ANICO's decision to reinsure Munich's coverage and did not need to be disclosed. *Id.*at 741-48. On May 27, 2014, the District Court entered judgment in Munich's favor in the amount of $5,621,669.66. ANICO filed a timely appeal.

## II.

The District Court had jurisdiction over this action under 28 U.S.C. § 1332, and we have jurisdiction over this appeal under 28 U.S.C. § 1291. ANICO challenges the District Court's findings that the information Munich withheld was not material to ANICO's decision to reinsure Munich's coverage and, therefore, Munich did not breach its duty of utmost good faith. Materiality is a question of fact or a mixed question of fact and law. *See Porter v. Traders' Ins. Co. of Chi.*, 58 N.E. 641, 642 (N.Y. 1900). Accordingly, in considering ANICO's appeal from the District Court's bench trial ruling, we apply a mixed standard of review: we first exercise plenary review over the legal standard for materiality the District Court identified, and then we review the District Court's application of that legal standard for clear error. *See Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 156 (3d Cir. 2010).

## III.

We first determine whether the District Court applied the proper legal standard to ANICO's counterclaim. We conclude that it did. We then determine whether the District Court clearly erred in applying the legal standard to the facts. We conclude that it did not.

5

A.

Under New York law, which all parties agree applies here, a reinsured owes a duty of utmost good faith to its reinsurer, and a breach of the duty of utmost good faith justifies rescinding the reinsurance contract. *See Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992). The duty of utmost good faith requires a reinsured to disclose to the reinsurer "all facts that materially affect the risk of which it is aware and of which the reinsurer itself has no reason to be aware." *Id.*

The District Court defined materiality as follows: "'A fact is material . . . if, had it been revealed, the insurer or reinsurer would either not have issued the policy or would have only at a higher premium.'" 999 F. Supp. 2d at 737 (quoting *Christiania*, 979 F.2d at 278). Additionally, the District Court held (1) that information was material only if an objectively reasonable reinsurer would consider the information material and (2) that material information only needed to be disclosed if a reasonable reinsured would know it was material. *Id.* at 741.

ANICO says this standard is too harsh; ANICO says information is material if it would "likely" influence the reinsurer's decision, relying on *Matter of Liquidation of Union Indemnity Insurance Co. of New York*, 674 N.E.2d 313, 319 (N.Y. 1996). Although in that case the Court of Appeals of New York said that "[m]aterial facts are those likely to influence the decision of [reinsurers]," the court explained that those are "facts which, had they been revealed by the reinsured, *would have* either prevented a

6

reinsurer from issuing a policy or prompted a reinsurer to issue it at a higher premium." *Id.* (emphasis added).

Information is also material only if it "might *reasonably* affect [the reinsurer's] choice." *Geer v. Union Mut. Life Ins. Co.*, 7 N.E.2d 125, 127 (N.Y. 1937) (emphasis added). In other words, it must be objectively reasonable that a reinsurer would consider the information material. And the reinsured must "'have reason to believe the fact . . . is material'" before disclosure is required. *Gulf Ins. Co. v. Transatlantic Reinsurance Co.*, 886 N.Y.S.2d 133, 151 (N.Y. App. Div. 2009) (quoting *Christiania*, 979 F.2d at 279).

ANICO suggests that we should apply the "total mix" test for materiality used in securities fraud cases. However, "as a federal court sitting in diversity, we are bound to follow the pronouncement of a state's highest court on an issue of state law." *City of Phila. v. Lead Indus. Ass'n*, 994 F.2d 112, 119 (3d Cir. 1993). The Court of Appeals of New York defined materiality, so we are bound by that definition. And the District Court did not impose a duty to inquire, as ANICO argues. The District Court merely considered whether ANICO inquired about information as one factor in deciding whether Munich had reason to believe the information was material. 999 F. Supp. 2d at 747 n.84.

Accordingly, the District Court's legal standard was correct, and we must review the District Court's ultimate conclusion on materiality for clear error.

B.

Under clear error review, we must affirm "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of*

7

*Bessemer City*, 470 U.S. 564, 573-74 (1985). The District Court's conclusion that the withheld information was not material is plausible, particularly in light of the testimony of the IOA employee responsible for underwriting ANICO's coverage of the "500 excess of 500" layer.

With respect to Munich's past losses and expected losses, IOA's underwriting process did not take Munich's profits or losses on the Everest program into account in calculating a premium for the "500 excess of 500" layer. Therefore, even if Munich's losses were disclosed, the disclosure may not have changed ANICO's decision. Similarly, with respect to a related deal between Munich and Everest, ANICO's decision to reinsure the "500 excess of 500" layer depended on whether Munich would agree to a premium that would compensate ANICO for the risk of paying claims at the "500 excess of 500" layer. The reason why Munich agreed to reinsure Everest would not have changed the risk that a claim would reach the "500 excess of 500" layer. With respect to unreported expected claims, ANICO has not shown that those claims fell within the "500 excess of 500" layer, and Munich disclosed the past claims in the "500 excess of 500" layer. And with respect to Munich's evaluation of a new claims agent, although Munich's reviewer doubted the accuracy of the estimates Everest provided, Munich provided ANICO with enough information that ANICO came to the same conclusion about those estimates. ANICO also argues that Munich should have disclosed that the break-even price Munich calculated for the "500 excess of 500" layer was higher than the price ANICO ultimately agreed to. However, the duty of utmost good faith only requires disclosure of material

8

facts that *affect* the risk. *Christiania*, 979 F.2d at 278. A price does not *affect* the risk; it *reflects* the risk. ANICO did not show that Munich failed to disclose the facts affecting the risk that underlay its calculation of the break-even price.

ANICO asked for the premium that Munich charged Everest and all loss histories for the new claims agent. However, Munich did not provide its own premium, and although Munich sent an underwriting review of the new claims agent, it did not send a claims audit that it had for a previous period. When a reinsurer specifically requests information, that information is material and must be disclosed if nondisclosure "substantially thwarts" the reinsurer's purpose in asking. *Geer*, 7 N.E.2d at 127. Here, nondisclosure did not substantially thwart ANICO's purpose in asking. With respect to Munich's premium, ANICO has not shown how IOA's underwriting process would have taken Munich's premium into account. Additionally, IOA underwrote coverage despite knowing it did not have Munich's premium. These facts suggest that not knowing Munich's premium did not substantially thwart ANICO's purpose in asking. With respect to the claims audit, the information the claims audit revealed about the new claims agent was that before the claims agent joined the Everest program, the agent stair stepped its reserves—that is, it raised its estimate of the value of a possible claim over time, which has a tendency to understate possible liabilities and to overstate assets. However, at trial the IOA underwriter agreed that the fact that the claims agent stair stepped its reserves before joining the Everest program "would not affect [her] calculations in any fashion." J.A. VIII.53:4-9. Accordingly, Munich's nondisclosure of these two items of information

9

did not substantially thwart ANICO's purpose in asking.

Therefore, the District Court did not clearly err in finding that the withheld information was not material to ANICO and did not need to be disclosed.

## IV.

For the reasons set forth above, we will affirm the District Court's judgment.