FRANK TOLAR, Respondent, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

Argued November 21, 1947; decided May 21, 1948.

*Kenneth S. MacAffer* and *Thomas F. Christie* for appellant. I. The representations made by decedent that she had not consulted a physician and had not been treated by one were representations that she did not have a disease of the heart. (Insurance Law, § 149, subd. 4.) II. Materiality of the undisputed misrepresentations was established as a matter of law when evidence was adduced that the application for insurance would have been rejected had it shown the facts of medical treatment and consultation for chronic endocarditis. (*Ketchem & Co.* v. *State Mut. Life Ins. Co.,* 162 F. 2d 977; *Oakdale Woolen Co.* v. *Equitable Life Assur. Soc.,* 66 N. Y. S. 2d 632; *Reznikoff* v. *Equitable Life Assur. Soc.,* 267 App. Div. 785, 294 N. Y. 935; *Peck* v. *Metropolitan Life Ins. Co.,* 38 N. Y. S. 2d 311; *Guardian Life Ins. Co. of America* v. *Aaron,* 181 Misc. 398; *Sherman* v. *Metropolitan Life Ins. Co.,* 52 N. Y. S. 2d 668; *Sachs* v. *Penn Mut. Life Ins. Co. of Philadelphia,* 28 N. Y. S. 2d 1016; *Herka Realty Co.* v. *La Salle Military Academy,* 229 App. Div. 668; *Zeffiro* v. *Profido,* 265 App. Div. 185.)

*Russell G. Hunt* for respondent. I. The evidence presented a question of fact which was properly submitted to the jury by the trial court. (*Lampke* v. *Metropolitan Life Ins. Co.,* 279 N. Y. 157; *Wilson* v. *Coulter,* 29 App. Div. 85; *Ward* v. *New York Life Ins. Co.,* 225 N. Y. 314; *Kavanagh* v. *Wilson,* 70 N. Y. 177; *Langer* v. *Metropolitan Life Ins. Co.,* 290 N. Y. 601; *DeGregorio* v. *Metropolitan Life Ins. Co.,* 255 App. Div. 725; *Turczynski* v. *John Hancock Mut. Life Ins. Co.,* 245 App. Div. 903, 271 N. Y. 573; *Tierney* v. *Travelers Ins. Co.,* 179 Misc. 604, 267 App. Div. 804; *Nowak* v. *Brotherhood of American Yeomen,* 249 N. Y. 78; *Equitable Life Assur. Soc.* v. *Milman,* 291 N. Y. 90; *Geer* v. *Union Mut. Life Ins. Co.,* 273 N. Y. 261.) II. The trial court correctly submitted to the jury the question of the child's knowledge.

Dye, J. The defendant appeals by permission from a judgment of the Appellate Division affirming a judgment in favor of plaintiff entered upon the verdict of a jury in an action to recover upon a policy of life insurance.

The testimony established that Dorothea Ann Tolar, the plaintiff's infant daughter, then fifteen years of age, under date of July 21, 1941, made application to the defendant company for a nonmedical policy of life insurance, that is, one requiring no physical examination. A policy in the amount of $1,000 was issued, and the premium paid. On September 12, 1942, one year, one month and sixteen days after the issuance of the policy, Dorothea died, the death certificate stating the cause of death as '' Embolism Due to Rheumatic Endocarditis ''.

The company refused to pay the proceeds to the father as designated beneficiary and, instead, tendered a return of the premium paid, alleging that the untrue negative answers to certain stated questions in the application, as to condition of heart and prior medical consultation and treatment within five years, were material representations upon which it had relied in issuing the policy and that, if it had had knowledge of the truth of the facts misrepresented by the applicant, it would not have issued the policy. The application was attached to such policy when issued and forms part of the contract (Insurance Law, § 142, subd. 1; *Minsker* v. *John Hancock Mut. Life Ins. Co.*, 254 N. Y. 333).

The application contained a series of questions which fell into two categories: one, a general group designed to reveal whether or not she had an uninsurable ailment or condition, including the question: '' 16. (a) Have you ever been told that you had any heart trouble? No.''. Because of sharp conflict between Dorothea's parents and the attending physician as to whether he had actually advised them or Dorothea as to the existence of chronic endocarditis following scarlet fever, the issue of Dorothea's knowledge of a heart condition at the time she made the application and whether or not she concealed that fact was submitted to the jury as the '' real issue '' which was resolved in favor of the plaintiff. Within the limits of this narrow question the trial court quite properly submitted such issue to the jury as question of fact (*Langer* v. *Metropolitan Life Ins. Co.*, 290 N. Y. 601; *Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314).

Such submission did not dispose of the appellant's other defense that, having relied on the untrue answers to questions in the other category, it was entitled to a dismissal as a matter of law. The critical questions and answers as appearing in the application are quoted for convenience, viz.:

" 6. What is your present condition of health? Good.

" 7. (a) When last sick?
(b) Nature of last sickness?
(c) How long sick?
Never. * * *

" 10. How much time have you lost from school or work through illness during the last five years? Give particulars.
None. * * *

" 22. Have you ever had any * * * (b) Illness or occupational disease? No.

" 23. What clinics, hospitals, physicians, healers or other practitioners, if any, have you consulted or been treated by, within the past five years? If none, so state.
None."

It was established that the answers given to these questions were wholly and entirely untrue as it appears by uncontradicted proof that in April and May 1937, Dorothea, then eleven years of age, had scarlet fever, necessitating her absence from school for twenty-five consecutive days. During this illness she was attended by Dr. Charles E. Stott, the family physician, who found that she was suffering from chronic endocarditis. Thereafter Dorothea came to the office on several occasions for examinations required by the school authorities and she was examined by Dr. Stott in the fall of 1937, again in September, 1938, in January, 1939, and February, 1941.

Each time he found she was a chronic endocarditis case and certified to the school authorities that because of her condition, she should be excused from school gymnastic classes and athletic activities. This proof was not controverted and being based on documentary evidence, it could not very well be. It is the effect that was in dispute, the plaintiff centering its attack on the insurer's failure to establish that the deceased made a material misrepresentation in the application signed by her or in other words, that the burden of proof of the existence of the unin-

surable condition rested on the insurer as a question of fact. The appellant insurer however, has shown by uncontroverted proof that it was its practice in approving nonmedical applications to rely on the information furnished by the answers to the pertinent questions; that it uniformly rejected applications revealing a heart condition and that this application would have been rejected, had it disclosed scarlet fever complicated with a heart condition and that in any event, if true answers had been given, at least inquiry would have been made to determine insurability. The appellant insurer contends that on this showing it was entitled to a directed verdict as a matter of law under subdivision 4 of section 149 of the Insurance Law. The pertinent language of such section is quoted: " 4. A misrepresentation that an applicant for life * * * insurance has not had previous medical treatment * * * shall be deemed, for the purpose of determining its materiality, a misrepresentation that the applicant has not had the disease, ailment or other medical impairment for which such treatment or care was given or which was discovered by any licensed medical practitioner as a result of such consultation or observation."

When we examine the uncontroverted proof that the answers given concealed the fact of prior medical consultation which led to a discovery of the heart condition and that the practice of the company was to reject nonmedical applications containing such information, it inevitably follows that the statutory definition of materiality is met and no further proof is needed that the false answers constituted " a misrepresentation that the applicant has not had the disease * * * which was discovered".

We have not heretofore had occasion to construe this particular statute. Our attention has been called to the recent case of *Ketchum & Co.* v. *State Mut. Life Assur. Co.* (162 F. 2d 977), in which a policy was issued in reliance on applicant's false answers to questions designed to show condition of health and prior medical treatment. It was established that the applicant had consulted his personal physician who, because of certain symptoms, had sent him to a heart specialist for a general examination. The latter reported back to the referring doctor that he found evidence of coronary insufficiency. Witnesses for the company established that had it

known of this report the application would have been rejected and framed questions were submitted to the jury. On appeal the plaintiff's contention that the insurer must prove the actual existence of the applicant's ailment was rejected as leading to consequences never intended by the Legislature in enacting subdivision 4 of section 149 for such a construction would give the applicant who concealed an advantage over those who disclosed. LEARNED HAND, J., discussed at length the provisions of the New York State statute under discussion here and its bearing on the question of materiality and came to the conclusion that upon the showing made, it could be disposed of as a question of law. In commenting on subdivision 4, he said (p. 979): "I the 'facts misrepresented' were the test of 'materiality,' there might be some plausibility in the plaintiff's argument that the insurer would have to prove that the applicant had in fact had the ailment, and the applicant's suppression of the physician's discovery would be irrelevant, although the discovery itself might of course be in such form that it would be competent evidence on the issue. However, subdivision four does not unconditionally make the existence of the ailment the 'fact misrepresented'; it makes it such only 'for the purpose of determining its materiality'; that is the materiality of the misrepresentation."

We are in accord with this interpretation of the statutory test of materiality, in fact, the language permits of no other construction. If an applicant misrepresents that he has not had "previous medical treatment, consultation or observation", he is then deemed to have represented that he has not had the disease, ailment or other medical impairment for which such treatment or care was given or which was discovered by any licensed practitioner as a result of such consultation or observation.

The materiality of the applicant's misrepresentation having thus been established as matter of law, the appellant's motion for a directed verdict should have been granted.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

FULD, J. (dissenting). With the court's construction of the statute (Insurance Law, § 149), I am in full accord and, there-

fore, concur in the decision that the judgment should be reversed. I cannot, however, agree to dismissal of the complaint. The assumption that there is no issue of fact — a condition precedent to dismissal — seems to me to be refuted by consideration of the record.

As interpreted, the statute renders vital and operative the doctor's asserted discovery that the insured had a heart condition when he examined her. Whether or no he actually did discover the existence of such a condition is undoubtedly a question of fact, and, as I read the record, that issue still remains in the case for determination by a jury. Though the doctor had written a letter that the girl had a heart ailment, that may not be said to stamp the evidence as conclusive or uncontrovertible in view of the explanation proffered by the parents as to the circumstances under which it had been written.

The judgments should be reversed and a new trial ordered.

DESMOND, J. (dissenting). Two juries, on sufficient evidence, have answered in the negative the only real question in this case: as to whether the insured knew that she suffered from a heart ailment.

We are told, however, that recovery must be denied under subdivision 4 of section 149 of the Insurance Law, which says that an applicant's misrepresentation that she had no previous medical treatment shall be deemed " a misrepresentation that the applicant has not had the disease [or] ailment  *  *  *  for which such treatment or care was given or which was discovered by any licensed medical practitioner as a result of such consultation or observation." I do not believe that the Legislature intended that an applicant who was never informed of her serious ailment must, because she failed to disclose visits to a doctor for what she thought was a minor ailment, be deemed to have falsely represented to the insurer that she never had the serious disease of the existence of which she was unaware. That would impose a drastic penalty for failure to disclose the unknown. There is no indication that the Legislature intended so unreasonable a result. I think subdivision 4 is subject to the necessarily implied condition that the applicant knew what the physician knew. Two juries have said that this applicant did not know, so she should be in the same position as one who

fails, for any reason, to mention a visit to a physician for treatment of a mere cold, or similar inconsequential illness.

There have been two trials and four appeals in this suit on a small life insurance policy. As the Appellate Division wrote: " A question of fact was presented for the jury to pass upon " (271 App. Div. 912). The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS and THACHER, JJ., concur with DYE, J.; FULD, J., dissents in opinion in which CONWAY, J., concurs; DESMOND, J., dissents in a separate opinion.

Judgments reversed, etc.