**VARIETY HOMES, INC., Plaintiff-Appellee,**

v.

**POSTAL LIFE INSURANCE COMPANY, Defendant-Appellant.**

**No. 156, Docket 26425.**

United States Court of Appeals
Second Circuit.

Argued Jan. 9, 1961.

Decided Feb. 17, 1961.

(Variety), a Connecticut corporation, for $30,000 with interest from November 1, 1958. Two policies for $25,000 and $5,000 payable to Variety had been issued by Postal on February 6, 1957, and April 2, 1957, respectively, on the life of Henry Singer, a shareholder and executive of Variety. Singer died on September 28, 1958. Upon failure to pay the face amounts of the policies, suit was commenced in the Connecticut Superior Court (removed to the Federal Court). The defense pleaded was that "the insured [Singer] made certain material statements of fact which were represented by him to be complete and true but which were, and were known by him to be, incomplete and false, and the defendant, relying thereon, was induced to issue said policy by fraud." The burden of establishing this defense rests upon Postal.

The negotiations leading to the issuance of the policies occurred in Connecticut. Singer was examined by Postal's doctor (Dr. Daniel Marshall) who filled out a form entitled, "Statements and Answers—Physician Forming Part II of Application." On the left side of the form were a series of questions from A–1 to J, then a column for answers "Yes" or "No" and a broad space headed, "If any question is answered 'Yes,' give dates and details. Give names and addresses of any physicians consulted within last 5 years."

Orrin G. Judd, New York City (Joseph L. Weiner, New York City, on the brief, Edward A. Bernstein, New York City, of counsel), for defendant-appellant.

Joseph P. Cooney, Hartford, Conn. (Jerome A. Scoler, on the brief; Henry F. Cooney, John F. Scully, Patrick J. Flaherty, Hartford, Conn., of counsel), for plaintiff-appellee.

Before CLARK, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

 The defendant, Postal Life Insurance Company (Postal), a New York corporation, appeals from a judgment in favor of plaintiff, Variety Homes, Inc.

Of the 20 form questions requiring a "Yes" or "No" answer, 7 were answered "Yes" and 13 "No." Question G–2 reads, "Fainting, palpitation, pain around heart, high blood pressure, shortness of breath or any indication of disease of the heart or arteries?" to which the answer is written "Yes." Singer obviously furnished the names and addresses of his various physicians and disclosed a coronary thrombosis in 1952 for which he was hospitalized. Dr. Marshall wrote under question C–4 "later [after the coronary thrombosis] consulted Dr. Peter Steincrohn, No. Whitney St. Htfd." and then added the words, "Has been asymptomatic since acute attack." At the bot-

tom of the form is the statement, "I have read the answers to the foregoing questions. The answers are correctly recorded by the examiner and they are complete and true. There are no exceptions to any answers other than as recorded." This statement Singer signed.

Upon these facts, Postal primarily bases its "misrepresentation" defense and seeks to be relieved of any liability under the policies. Because of Dr. Marshall's use of the word "asymptomatic," Postal argues (in Briefs) that "the insured asserted that there had been no symptoms of heart trouble since his coronary attack in 1952"; that the "representation that he had been free of symptoms during the 4½ years between his coronary attack and his application for insurance" was false; that Singer denied the existence of symptoms after his coronary attack; that Singer positively affirmed that he had been asymptomatic since his heart attack; and that "the misrepresentation was as to a specific fact and in answer to a specific question."

The fallacy of the argument is shown by the facts. There is no proof that Singer ever asserted that he had had no symptoms since 1952. To the contrary, the answer to "pain around heart," "shortness of breath" and "any indication of disease of the heart or arteries" was "Yes." This answer also refutes the charge that he denied the existence of symptoms. No specific question was incorrectly answered or no specific fact was misrepresented.

Postal's examining doctor, Dr. Marshall, was not called as a witness. The trial court did not "recall any explanation for his failure to testify at the trial." He was the only person qualified (assuming his testimony were admissible) to state what occurred during his examination of Singer or to support Postal's present assertion (referring to the insurance application) that "Dr. Marshall carefully answered every pertinent question." If available and called, he could have explained the "see above," which Postal claims supports its contention that Singer's "Yes" in G–2 refers only to his 1952 attack. Absent such proof, all reasonable inferences are to the contrary.

Singer did not use the word "asymptomatic." It was written by Postal's examining doctor presumably after an adequate opportunity to ask the insurance applicant all necessary and relevant questions concerning his heart condition. It is inconceivable that Dr. Marshall, upon being advised of the pains in the heart and shortness of breath, would not have inquired concerning the period in which these symptoms occurred—particularly after being advised that Singer had consulted Dr. Steincrohn, a Hartford heart specialist, subsequent to his original attack. Although Postal was given this information by Singer, who willingly executed authorizations, no effort was made by Postal to communicate with this doctor to inquire concerning Singer's condition and to obtain directly from him, without the possible bias if obtained from Singer, his opinion as to Singer's state of health.

The very purpose of the elaborate questionnaire required from insurance applicants is to supply information upon which the insurance company can make an informed judgment as to whether it will accept the risk. Inquiry as to the names of doctors treating applicants for the past five years cannot be a meaningless gesture. The physical examination by the insurance company's doctor also must have some significance. Surely all this carefully planned and organized system does not fade into oblivion upon an applicant's self-diagnosis of "asymptomatic." How frequently does the average layman patient, upon being asked by a doctor how he feels, reply, "Oh! quite asymptomatic, thank you"? Even Postal's doctor conceded this to be a "medical term." Just as an insurance contract " 'should not be couched in language as to the construction of which lawyers and courts may honestly differ' " (Bronx Savings Bank v. Weigandt, 1956, 1 N.Y. 2d 545, 551, 154 N.Y.S.2d 878, 882, 136 N.E.2d 848, 60 A.L.R.2d 1422), so too should those portions of the application

which are filled out by a physician not be worded so as to be misleading or ambiguous when read by a layman.

 Had Singer made any material misrepresentation in his application, of course, his beneficiary should not be allowed to recover. Full support should be given by the courts to the requirement that truthful answers be given by applicants. Thus, "A life insurance company is free to choose the risks which it will assume." The answers "are intended to guide the company in deciding whether to accept or reject the application." Geer v. Union Mutual Life Insurance Co., 1937, 273 N.Y. 261, 7 N.E.2d 125, 127. The applicable legal principle cannot be more succinctly or better stated than by the trial judge who said, "Under the law of both states, misrepresentation of the existence of symptoms of heart disease would be held material and without more would undoubtedly avoid the policies." It is equally true, as Postal argues, that an insurer is entitled to rely on the representations of the insured and (with qualifications) that the company is under no duty to investigate the truthfulness of the representations. But principles cannot be applied in the abstract. The extent of the reliance must be reasonable. The company cannot close its eyes to the obvious. Here it knew that Singer had had a coronary thrombosis and an arteriosclerotic condition; that he had consulted a physician subsequent to the attack; and that he had answered "Yes" to the very symptoms (pain and shortness of breath) which Postal claims were concealed.

The factual situations presented in the many cases cited by Postal do not give Postal precedential support for the points of law it here advances. In the Geer case, supra, Judge Lehman defined a misrepresentation as material where it *"substantially* thwarts the purpose for which the information is demanded and *induces action which the insurance company might otherwise not have taken"* (273 N.Y. at page 271, 7 N.E.2d at page 127). There the applicant deceived the company by falsely answering "No" to the question, "Have you ever had any treatment within the last five years at any dispensary, hospital or sanitarium?" False answers (usually by failure to disclose) were given in Tolar v. Metropolitan Life Ins. Co., 1948, 297 N.Y. 441, 80 N.E.2d 53; Zeldman v. Mutual Life Ins. Co., 1st Dept. 1945, 269 App.Div. 53, 53 N.Y.S.2d 792; Reznikoff v. Equitable Life Assurance Society, 2nd Dept. 1943, 267 App. Div. 785, 45 N.Y.S.2d 650; Foley v. John Hancock Mut. Life Ins. Co., Sup.App.T., 1st Dept. 1948, 81 N.Y.S.2d 566, and in the many other cases cited. In Cherkes v. Postal Life Ins. Co., 1st Dept. 1955, 285 App.Div. 514, 138 N.Y.S.2d 788, strongly relied upon by Postal, the insured revealed only a 1949 gall bladder operation and failed to disclose a kidney condition which shortly before the issuance of the policy had required hospitalization and examinations by three doctors. The court held that knowledge of the gall bladder operation "did not cast the burden upon defendant of looking suspiciously and searchingly beyond the facts disclosed for undisclosed ailments" (Id., 285 App.Div. at page 516, 138 N.Y. S.2d at page 790). This is a sound principle and would be applicable here had Singer concealed other ailments. Postal "was entitled to rely upon the insured's representations" but "The question is whether the information given, although partial, was sufficiently indicative of something more to be tantamount to notice of the unrevealed." Id., 285 App. Div. at page 516, 138 N.Y.S.2d at page 790. Certainly the information was more than adequate to give Postal full opportunity to exercise its judgment after an appraisal of Singer's heart condition. Subjective though the symptoms of angina pectoris may be, since they appear to be so well known from a medical viewpoint, Postal, which bears the burden of proof as to its defense, was not privileged to rely on a medical term (asymptomatic) inserted by its own doctor as constituting a material misrepresentation so as to defeat the beneficiary's rights under the policies. Furthermore, in view of the consideration represented as being

currently given by life insurance companies to substandard underwriting, some inquiry where a substandard situation is disclosed would seem rather essential to such a program.

The trial court's conclusion from all the facts that the policies were enforceable both under New York and Connecticut law was correct.

The judgment is affirmed.