William B. Groat, J.
This is an action brought by the beneficiary of an insurance policy issued by the defendant on the life of her deceased husband on July 18, 1957, to recover the face amount of said policy. The insured died of coronary sclerosis on January 6, 1958, within the contestability period. (Insurance Law, § 155, subd. 1, par. [b].)
The defenses asserted are (1) that the application for said policy contained material misrepresentations and (2) that the said policy had no legal inception because of the breach of the condition precedent that “ Any insurance applied for shall not take effect unless the first premium thereunder is paid during *411 the good health of the proposed insured ”. The insured paid his first premium, on or about July 10, 1957.
The defendant bases its allegations of material misrepresentations on the following questions propounded by the insurer in the said application and answered by or for the insured over his signature and certification that 1 ‘ I have read the foregoing answers which are true, full and complete, and agree that such answers shall be part of the application * * * and * * * also become part of any policy contract that may be issued on the strength thereof.”
Q. “2. f. Have you ever made a disability claim, or a claim for workmen’s compensation or disability pension benefits? (Give dates and causes.) ” A. “No”.
Q. “6. Have you ever had or been treated for any disease or disorder of the: (Answer each separately.)
“ a. heart, blood vessels or blood? ” A. “ No ”.
“ b. kidney, bladder, genito-urinary or reproductive organs ? ” A. “ Yes, see below ”.
Q. “7. Have you ever: * * *
‘ ‘ b. consulted a physician about a pain in the chest or shortness of breath? ” A. “ No ”.
“ d. had a surgical operation? ” A. “ Yes ”.
“ e. had other surgery recommended? ” A. “ Yes ”.
“ f. been in a hospital or other medical institution for observation, diagnosis, treatment or operation? (Where?) ” A. “ Yes. Hemorrhoids 1957 Jan.— Brooklyn Hosp. Prostate 1956 Nov. —■ Brooklyn Hosp. ’ ’
“ g. had any other illness or injury? ” A. “ No ”.
Q. “8. Have you ever had :
“ a. an electrocardiogram? A. “ Yes in Hosp. above ”.
“ b. an x-ray examination?” A. “Yes in Hosp. above”. “ c. your blood examined? ” A. “ Yes in Hosp. above ”.
Q. “9. Have you consulted or been examined or treated by any physician, practitioner or specialist during the past five years?” A. Cross placed in box labelled “ Yes ”.
“ (If ‘ Yes,’ state details of each such consultation, examination or treatment below.) ” A. “ Dr. Marino, Hanson PI, Bklyn Surgeon in above operations. Dr. Giarratano, Lafayette Av Bklyn General check-up — 3 mo ago ”.
The insured answered question 2f in the negative while the undisputed fact is that he made three disability claims and received disability payments pursuant thereto respectively from the New York State Insurance Fund for “ chest pains ” during the period August 1, 1955 to September 26, 1955, for which the *412 insured received a total of $231; from the Mutual Benefit Health and Accident Association of Omaha, Nebraska, for 1 ‘ chest pains ’ ’ during the period August 3, 1955 to October 1, 1955, and for ‘1 coronary insufficiency ’ ’ during that period as certified to on said claim by his physician, Dr. N. Miller, for which the insured received a total of $360; and from Continental Casualty Company for “ chest pains ” for the period August 3, 1955 to August 20, 1955, and for the further period August 20, 1955 to September 10, 1955, for a total, including hospitalization, of $293.32.
The insured answered questions 6a and 7b in the negative and did not give ‘ ‘ true, full and complete ’ ’ answers to questions 7f, 8a, 8b, 8c and 9. The undisputed fact is that the insured consulted with and was treated by Dr. Miller from December, 1954 through September, 1955 for chest pains, shortness of breath and choking sensations, and was admitted to Memorial Hospital of Queens on August 5, 1955 by his physician where he was kept for 12 days on the insured’s complaint that he had chest pains and a choking sensation which his physician testified are concomitant with coronary artery disease and that the insured had a history of dyspnea, shortness of breach, and that he became breathless on the slightest exertion. Dr. Miller testified that he had treated the insured for pain in the left chest on December 22, 1954, and that an electrocardiogram was then taken and that he prescribed medication therefor.
On August 5, when the insured was admitted to the Memorial Hospital of Queens, Dr. Miller tentatively diagnosed the insured’s ailment as coronary thrombosis. However, after his stay in the hospital where an electrocardiogram, chest X ray and sedimentation rate were taken, Dr. Miller’s discharge diagnosis was that of ‘ ‘ coronary insufficiency, angina in origin, angina pectoris ”.
Dr. Miller testified that this was due to sclerosis and was a progressive condition and that patients normally are not expected to live for more than five years. He further testified that a patient suffering from coronary insufficiency who lives for more than five years is considered cured; and that the insured’s death by coronary sclerosis was “ confirmatory of his diagnosis.” He testified further that he told the insured to ■discontinue the use of tobacco and that after his discharge from that hospital he had seen the patient on four occasions and that on September 24,1955 he “ told him to work part time and to be re-evaluated every two weeks.”
Dr. Wilbur A. Smith, the associate medical director of the defendant, testified that under its rules and in accordance with *413 its practices, the defendant makes medical evaluations of each application for life insurance as it did in the instant case, and that in the event of an affirmative answer, as was done with respect to the affirmative answers to questions 6b, 7d, e, f, 8a, b, c and 9, further inquiry is made. In this connection, certificates were requested and received by the defendant from Drs. Marino and Giarratano, which related to the treatment of the insured for prostate and hemorrhoid complaints at Brooklyn Hospital. No mention was made of chest pains, shortness of breath, presence of or treatment for disease or disorder of heart, blood vessels or blood. The records of Brooklyn Hospital show that an electrocardiogram, X ray and sedimentation test were taken in connection with the surgery performed there and they did not reveal any facts to indicate that the insured suffered from any heart ailment or disease.
Dr. Smith further testified that if the answer to the questions relating to the making of disability claims would have been answered “yes” the defendant under its rules and practices would not have approved the said application, but would have requested an explanation and that, if the explanation were “ to their liking ’ ’, it would have demanded additional special examinations. He further testified that under the defendant’s rules and practices, if the answers to questions 2f, 6a and 7b in the instant application were answered in the affirmative or if the answer to questions 7f, g, 8a, b, c and 9 in said application were true, full and complete, in other words and specifically as in this case, if it revealed the hospitalization in the Memorial Hospital of Queens and the complaints of chest pains and shortness of breath and if further investigation or examination would have revealed that the insured had suffered from and received treatment for coronary insufficiency, the defendant would not have issued the said policy. This testimony was not successfully contested or rebutted.
The record in this case leads to the immutable conclusion that the insured misrepresented when he falsely answered questions which sought to determine Avhether or not he had made disability claims and the details thereof, that he misrepresented when he falsely ansAvered questions concerning his past and present state of health, particularly those questions which sought to elicit facts concerning heart disease and symptoms thereof, and that he misrepresented when he falsely ansAvered or did not fully answer questions relating to all medical consultations, treatment and hospitalization (Insurance Law, § 149, subd. 1), and that by so doing he misrepresented that he did not have the disease, ailment or impairment for which care or treatment was *414 given him or which was discovered by a licensed medical practitioner as a result of such consultation or observation. (Insurance Law, § 149, subd. 4; Tolar v. Metropolitan Life Ins. Co., 297 N. Y. 441.)
The materiality of these misrepresentations has clearly been established by the unrebutted testimony of the defendant’s assistant medical director who testified that if, in accordance with the insurer’s rules and practices, the questions that were answered in the negative had been answered in the affirmative, the application would have been rejected. (Metropolitan Life Ins. Co. v. Goldberger, 3 Misc 2d 878; Home Life Ins. Co. v. Kupfer, 281 App. Div. 685.) Notwithstanding this fact, the misrepresentations made by the insured are of so serious a nature — ones that go to the core of the insurer exercising its right to accept or reject the application for this insurance policy on the basis of the true state of the insured’s health, or the insurer’s estimation of how long the insured will live — as to be material as a matter of law. (Insurance Law, § 149, subd. 2; Ranellucci v. John Hancock Mut. Life Ins. Co., 200 Misc. 1111; Ettman v. Equitable Life Assur. Soc. of U. S., 6 A D 2d 697; Geer v. Union Mut. Life Ins. Co., 273 N. Y. 261.)
Knowledge by the insurer that the insured had an electrocardiogram, chest X ray and sedimentation rate taken, all of which, incidentally, were upon the investigation by the insurer found to be negative relating to heart disease, did not impose a burden upon the insurer to inquire beyond the facts disclosed for undisclosed ailments. (Metropolitan Life Ins. Co. v. Blum, 7 A D 2d 488; Cherkes v. Postal Life Ins. Co., 309 N. Y. 964.) Accordingly, the defendant sustained its first defense.
In view of the record in this case, particularly the testimony of Dr. Miller that the insured was suffering from what he diagnosed as coronary insufficiency due to sclerosis, a progressive disease, which diagnosis was confirmed by the insured’s death due to coronary sclerosis within five years from the date of that diagnosis, which was not rebutted by the plaintiff (Matejunas v. Prudential Ins. Co., 244 App. Div. 802; Rossetti v. Metropolitan Life Ins. Co., 10 N. Y. S. 2d 437; Byard v. Royal Ind. Co., 49 N. Y. S. 2d 60), it is clear that the insured was not in good health at the time he paid the first premium and the said insurance policy did not have a legal inception. (Reznikoff v. Equitable Life Assur. Soc., 267 App. Div. 785, affd. 294 N. Y. 935; Flanigan v. Travelers Ins. Co., 224 App. Div. 295; Drilling v. New York Life Ins. Co., 234 N. Y. 234.) Accordingly, the defendant sustained its second defense.
*415 Plaintiff’s motion to conform the pleadings to the proof is granted and her motion for judgment is denied. Defendant’s motion for judgment is granted. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. Submit judgment accordingly.