Abraham A. Berry, J.
This action originated in the Small Claims Court by the service of a summons to recover the sum of $300 paid by plaintiff to defendant as premium under its policy Mo. 7-500-952 issued on July 7, 1961. Plaintiff seeks reimbursement of the premium which he had paid, under the following clause in the policy: ‘‘ The Company agrees, subject to the terms and conditions of this provision and the policy, to waive the payment of premiums under this policy upon receipt at its Home Office of due proof of the Insured’s total disability at that time and that (1) * * * while the policy and this provision are in full force and (2) the total disability has been continuous for at least 6 months.”
Defendant appeared and served a detailed answer setting forth as a first separate and complete defense that the policy contained provisions excluding any benefits under its waiver of premium clause if the injury or disease was contracted prior to the payment of the first premium, or if the disability had ceased prior to the receipt of due proof of total disability; that the disability, if any, had been contracted prior to the time the first premium had been paid, and therefore plaintiff was precluded from recovering this money; as a second separate and complete defense defendant claims that the total disability had ceased prior to the receipt by defendant of proofs of total disability. As a first counterclaim defendant alleges misrepresentations in the application and also concealment of medical examinations, treatment and hospitalization; that these misrepresentations and concealments were material; and demanded affirmative judgment of rescission of the waiver of premium clause and relief incidental thereto.
Attached to the policy was the application form, in which, among other questions, the following appeared :
‘ ‘ 7. Have you ever consulted or been treated by any physician or practitioner for, or have known indication of: (a) brain or nerve disease, dizziness, epilepsy, severe headaches, unconsciousness, paralysis, nervous or mental disorder?
* * * *
“ 9. Have you during the past five years, other than as stated above: (a) consulted, been treated, or examined by any physician or practitioner? (b) been treated or confined in any hospital clinic or similar institution? ”
To the foregoing questions, the applicant answered “no”. Plaintiff sent a “ claimant’s statement” dated July 24, 1965 in which he described the nature of his illness and precise cause of disability as “nerves”; that the disability commenced on May 21, 1964 and ceased on July 12, 1965, on which day he was *1049 able to resume his gainful occupation. The ‘ ‘ attendant physician’s statement” dated July 20, 1965, filed with claimant’s statement, also stated that the insured was able to resume work July 12, 1965.
It is clear, therefore, that at the time the claim was made, plaintiff had completely recovered from his disability; that his claim, whether valid or otherwise, was filed too late to permit recovery by him.
With respect to the representations to which reference has been made, there was introduced in evidence a hospital record which contained a diagnosis made by the attending physician on January 19,1959, indicating that plaintiff was suffering from neurasthenia. On July 23, 1959 plaintiff was treated in the neurology clinic at the same hospital and the examining physician stated: ‘‘ Thirty-nine year old male, married, complains of dullness, cannot concentrate and relax, nervous, restless, worrisome, emotionally unstable, no abnormal neurological findings. Impression: anxiety neurosis.”
It is apparent, therefore (1) that the disease antedated the issuance of the policy, and (2) there was a misrepresentation of the assured’s state of health and visits to a doctor or hospital.
Section 149 of the Insurance Law has made misrepresentation and concealment of medical consultation or treatment equivalent to a representation that the individual did not suffer from the disease for which such treatment was rendered. Defendant has established to the satisfaction of the court that it would not have issued the policy of life insurance containing the waiver of premium clause if the foregoing facts were known to it, and that if it had been apprised of the true facts it would have rejected plaintiff’s application therefor.
In Reznikoff v. Equitable Life Assur. Soc. (267 App. Div. 785, 786, affd. 294 N. Y. 935) the court stated: “ The misrepresentations, even if made innocently, were on this application in 1930 material to the risk, since they prevented the defendant from exercising-its choice. (Geer v. Union Mut. Life Ins. Co. 273 N. Y. 261; Kuritzky v. National Cas. Co., 261 App. Div. 1083.) ”
In New York Life Assur. Co. v. Miller (17 Misc 2d 532, 533) Peck, J., stated: ‘ ‘ The court should protect the insured against an arbitrary cancellation of a policy, but it must also protect the insurance company against a deprivation of the right to exercise its own judgment.” (Italics supplied.) (See, also, Tolar v. Metropolitan Life Ins. Co., 297 N. Y. 441.) Plaintiff is bound by the representations contained in the application, whether these statements were deliberately or innocently made, -
*1050 Prior to the adoption of the New York City Civil Court Act, neither the Municipal Court of the City of New York nor the City Court of the City of New York had jurisdiction to grant affirmative equitable relief on a counterclaim. (Meisels v. Harris, 136 N. Y. S. 2d 655; Schreiber v. Noe, 137 Misc. 105.)
In 1961 the present section 15 of article VI of the Constitution was adopted, which authorized the Legislature to provide a single court of city-wide jurisdiction. Subdivision b enumerated the types of actions that could be brought in the new court. After reciting the various provisions, it further provided that the court of city-wide civil jurisdiction shall further exercise such equity jurisdiction as may be provided by law.
Pursuant to the authority granted by the aforesaid amendment to the Constitution, the New York City Civil Court Act was enacted in 1962. In 1963 section 208 was amended and, insofar as pertinent, reads as follows:
“ The court shall have jurisdiction of counterclaims as follows:
“ (a) Of any counterclaim the subject matter of which would be within the jurisdiction of the court if sued upon separately.
* * *
“(c) Of any counterclaim for:
‘ ‘ 1. the rescission or reformation of the transaction upon which the plaintiff’s cause of action is founded, if the amount in controversy on such counterclaim does not exceed $10,000 ”.
The court has been unable to find any published decisions interpreting the effect of subdivision (c) of section 208. However, the language is clear, unambiguous, and unquestionably confers the power to this court to grant the affirmative relief demanded by defendant.
Judgment is directed dismissing the complaint on the merits and for affirmative relief as demanded.