OPINION OF THE COURT
David O. Boehm, J.
This case involves the right of contingent beneficiaries to *912 annuity death benefits where the primary beneficiary waived her right to the proceeds in a matrimonial property settlement agreement with the insured.
The decedent, Harold A. DePuy, married defendant, Janice Sullivan, in 1951 and they had six children, Mark, Drew, Neil, Mary, Judith and John. He taught at St. John Fisher College and, thereafter, at Rochester Institute of Technology, and was a participant in the Teacher’s Insurance and Annuity Association and College Retirement Equities Fund (TIAA/CREF).
When decedent enrolled in TIAA/CREF in 1966, question 8 of the enrollment application required him to name primary and contingent beneficiaries. No names were placed there; rather, the space is stamped "see attached amendments”. A printed legend at the bottom of question 8 states: "Note: If no Primary Beneficiary (Class I) is living at time of your death, the proceeds are payable to the Contingent Beneficiary(ies) (Class II)”. This page is not signed by decedent. Decedent signed another page of the application which contains a number of questions, such as name, date of birth, amount of premium payments, etc. Question 6 asks for the names of the "Primary Beneficiary” and the "Contingent Beneficiary, if any”. Janice DePuy’s name is handprinted in the space for primary beneficiary and "my children” handprinted in the contingent beneficiary space. The page is dated "this First day of Oct. 1966” and underneath the date is the decedent’s signature. Nowhere on this page is there a similar requirement that the primary beneficiary not be "living at the time of your death” in order for the proceeds to be payable to the contingent beneficiaries.
On March 11, 1967, the decedent signed an amended beneficiary designation, again naming Janice DePuy as primary beneficiary and, as contingent beneficiaries, after the typewritten clause, "The children born of any and all marriages of the Annuitant and any children legally adopted by the Annuitant at any time”, the names of Mark, Drew, Neil, Mary and Judith DePuy are written.
Thereafter, on April 21, 1967, the decedent executed yet another amended beneficiary designation. It was essentially the same as the one of March 11, 1967, except that the dates of birth of the above children are added and the language which had preceded the children’s names is changed to read, "and any other children born of any and all marriages of the Annuitant and any children legally adopted by the Annuitant *913 at any time”. This was the final amendment. John was never named as a contingent beneficiary, not having been born until July 7,1971.
The decedent and Sullivan were divorced on December 30, 1986. The judgment of divorce incorporated an oral stipulation which provided, among other things, that each party would transfer one half of the marital portion of his or her retirement account to the other in accordance with the Szulgit formula (Szulgit v Szulgit, 94 AD2d 979), and a qualified domestic relations order (QDRO) was thereafter signed on April 26, 1989. It provided for one half of the marital portion of the decedent’s annuities to be transferred to Sullivan. To effect the transfer, Sullivan also executed a "Marital Property Distribution Authorization and Release”, whereby she released all of her rights to the balance of the annuities. TIAA/ CREF then transferred the agreed-upon 50% of the decedent’s annuities to Sullivan in accordance with the QDRO. It appears that decedent never received his percentage of Sullivan’s retirement benefits.
On August 12, 1988, Ethan was born to the decedent and the plaintiff, Kathleen S. Doyle. On January 6, 1990, the decedent died. His will bequeathed his entire estate to Kathleen and, in the event she predeceased him, to Ethan. Attorney James G. Vazzana has been appointed by the Monroe County Surrogate as guardian ad litem of Ethan and is presently serving in that capacity.
Plaintiff commenced this action against Sullivan and TIAA/ CREF, seeking payment to the estate of the decedent’s annuity death benefits and the one-half marital percentage of Sullivan’s retirement account. TIAA/CREF has interpleaded the decedent’s estate, Sullivan, the six children of the marriage and Vazzana, as guardian ad litem of Ethan DePuy.
Plaintiff now moves for summary judgment for the relief sought in the complaint, including payment by TIAA/CREF of the guardian ad litem’s fees and expenses incurred to date in the interpleader action.
Sullivan, in turn, has cross-moved for judgment for the death benefits, and for TIAA/CREF to pay her attorney’s fees and costs.
The six children have cross-moved for judgment awarding the death benefits to either Sullivan or to themselves, and requiring TIAA/CREF to pay their attorney’s fees and costs.
Lastly, TIAA/CREF cross-moves for judgment that its attor *914 nev’s fees be made payable out of the death benefits. At oral argument, TIAA/CREF’s request to pay the death benefits into court and to be discharged as a stakeholder was granted.
Although divorce does not affect the right of a former spouse to recover life insurance proceeds upon the death of his or her former spouse (see generally, 71 NY Jur 2d, Insurance, § 1842), such rights may be waived by a property settlement agreement (Curley v Giltrop, 68 NY2d 651; Mohawk Airlines v Peach, 61 AD2d 346 [Simons, J.], lv denied 44 NY2d 838).
The effect of the parties’ stipulation by which each was to receive one half of the marital portion of the other’s retirement account is essentially no different than the waivers in Curley v Giltrop (supra) and Mohawk Airlines v Peach (supra). The decedent in Curley, like the decedent here, did not change the designation of his former spouse as beneficiary. The Court of Appeals held that the former wife was precluded from making a claim for the death benefits. Having received the consideration she bargained for in exchange for her waiver, the former spouse "became bound to fulfill her promise not to make claim for retirement program death benefits” (68 NY2d 651, 654, supra).
Although Sullivan now claims that she did not intend to relinquish her rights to decedent’s retirement death benefits, this flies in the face of the clear and express language contained in the "Marital Property Distribution Authorization and Release”, wherein she released all rights to the balance of the annuities held by the decedent. Additionally, "the separation agreement was a general property settlement, final and complete between the parties” (Mohawk Airlines v Peach, 61 AD2d 346, 349, supra).
Thus, it is now clear that a former spouse may waive any right to life insurance proceeds by a property settlement agreement. However, there is no authority in this State addressing the status of contingent beneficiaries after such a waiver. It is the plaintiff’s contention that the language in the original TIAA/CREF application requires the primary beneficiary to predecease the insured before the proceeds become payable to the contingent beneficiaries. Since Sullivan is still alive, plaintiff argues, the contingent beneficiaries have no claim to the proceeds, and the death benefits must be paid to the estate. The court’s attention has been called to only two cases which have addressed this question, one in Florida, the other in Michigan.
*915 The Florida District Court of Appeals held that where the contingent beneficiary’s right to life insurance proceeds was conditioned upon the death of the primary beneficiary, the contingent beneficiary is, nevertheless, entitled to the proceeds when the primary beneficiary, although surviving the insured, relinquishes her right in a property settlement agreement (Hoffman v White, 277 So 2d 290 [Fla Dist Ct App]).
The Michigan Supreme Court (In re Estate of Seitz v Metropolitan Life Ins. Co., 426 Mich 630, 397 NW2d 162) reached a contrary conclusion, holding that where a beneficiary designation expressly conditioned a contingent beneficiary’s rights upon the primary beneficiary’s prior death, the disqualification of the primary beneficiary by divorce did not thereby entitle the contingent beneficiary to the insurance proceeds. The beneficiary’s death, the court held, was not the same as the beneficiary’s disqualification. In so holding, the court distinguished two of its earlier decisions which had reached a contrary result.
Because the result reached in Michigan appears to be based upon the rule that a contract of insurance, which would include an annuity, is to be interpreted as any other contract according to its terms, which is the same rule followed in New York (see, 69 NY Jur 2d, Insurance, § 692), I would ordinarily reach the same conclusion as that court did and grant summary judgment to plaintiff.
However, it is first necessary to address the threshold question of whether there is in the contract here the same requirement that the primary beneficiary predecease the insured before the contingent beneficiaries may take.
The contract language providing for the proceeds to be payable to the contingent beneficiary, "[i]f no Primary Beneficiary * * * is living at the time of [the insured’s] death”, is not contained in any beneficiary designation which has been either filled out or signed by the decedent. The language appears only as a printed part of one page of the application under question 8, which is not completed, but merely stamped, "see attached amendments”.
On the other hand, another page of the application containing the beneficiary designation is fully completed and is signed by the decedent, but it contains no such condition or limitation. The two subsequent change of beneficiary forms are also fully completed and signed by the decedent, and again contain no such condition. They refer to and amend only question 6 of *916 the decedent’s original application, without any reference to question 8, or to its printed legend.
Ordinarily, an application for insurance must be signed and delivered (see, 68 NY Jur 2d, Insurance, § 634). Upon attachment to the policy, the application then becomes a part of the contract (see, Tolar v Metropolitan Life Ins. Co., 297 NY 441; Insurance Law §§ 3204, 3223 [b]). However, signing the application is not always required and, even when it is, that requirement may be waived by the insurer (see, 68 NY Jur 2d, Insurance, § 635). In all events, the insured’s signature upon an application goes only to the question of whether there has been a proper offer by the applicant. Once accepted, the contract becomes complete and the failure to sign an application form, as in this case, is no longer relevant in determining the obligation of the insurer. However, it may be relevant to determine the insured’s intent.
Although the construction of an insurance contract is generally a question of law (see, Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169), when there is ambiguity in the language, or its interpretation depends upon the relationship of the parties, or the surrounding circumstances, "the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact” (Kenyon v Knights Templar & Masonic Mut. Aid Assn., 122 NY 247, 254; see also, Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27, affd 49 NY2d 924). The meaning of the language is first a question of fact. The construction of the court is then based upon the fact-finder’s determination (see, Lacks v Fidelity & Cas. Co., 306 NY 357, rearg denied 306 NY 941).
In deciding what road to take, one is confronted with question 8 and why it is attached to the policy at all. What was its purpose, if any, when the annuity coverage was originally written? Was it intended that it would govern the disposition of proceeds upon the death of the insured; was it superseded by the subsequent amendments; was it surplusage from the very beginning? These are the questions that create precisely the ambiguity which requires determination. Such questions may not be resolved without the factual inquiry and analysis which only a trial will bring. Accordingly, all of the motions for summary judgment with respect to the death benefits are denied.
The application by Sullivan and the children to require TIAA/CREF to pay their litigation expenses is predicated on *917 the view that the interpleader action was unnecessary because of the weakness of the plaintiffs claim, and because there is no disagreement between the primary and contingent beneficiaries as to the validity of Sullivan’s claim. This, however, ignores the fact that the action on behalf of the estate was commenced against Sullivan and TIAA/CREF before the interpleader action was commenced. Regardless of the merits of the estate’s claim, TIAA/CREF did not initiate this litigation, but merely responded to a suit brought against it. Given the strong arguments advanced by both sides, the absence of legal authority in this State on the issue, and the fact that TIAA/ CREF is merely a stakeholder brought into the litigation, there is no sound reason to obligate TIAA/CREF for legal expenses. To hold otherwise would discourage innocent stakeholders from bringing interpleader actions (see, Merrimack Mut. Fire Ins. Co. v Moore, 91 AD2d 759, 761).
Subdivision (f) of CPLR 1006 authorizes the court to "impose such terms relating to payment of expenses, costs and disbursements as may be just and which may be charged against the subject matter of the action.” The application by TIAA/CREF to have its expenses paid out of the death benefits is persuasive, given its defensive posture in this proceeding (see generally, 2 Weinstein-Korn-Miller, NY Civ Prac If 1006.14). However, the contingent beneficiaries are also innocent parties and are not responsible because the stakeholder had to bring the interpleader action. They would be unjustly penalized if any proceeds due them were reduced through no fault of their own. In the exercise of discretion, therefore, the application of TIAA/CREF is denied.
Finally, plaintiff requests that TIAA/CREF be directed to pay the guardian ad litem’s fees and expenses, contending that, since Ethan was clearly not entitled to the death benefits, there was no reason to name him as a party and require the estate to pay the costs of his representation. TIAA/CREF, however, persuasively argues that it lacked personal knowledge of the legal relationship between the decedent and Ethan, that it was unclear whether the interests of Ethan were protected by the estate, whether his guardian ad litem would assert a claim independent of and adverse to the estate, and that the legal rights of nonmarital children are quite uncertain (see generally, Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 4-1.2, at 724). For these reasons, plaintiffs application is also denied.