99 F.3d 402
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Brooke QUINN, Terrence Quinn and Brian Quinn, Plaintiffs-Appellants,
v.
FEDERAL KEMPER LIFE ASSURANCE COMPANY, Defendant-Appellee.
 No. 95-7584.
 United States Court of Appeals, Second Circuit.
 Dec. 26, 1995.
 
 1
 APPEARING FOR APPELLANTS: Raymond J. Plouffe, Jr., Bai, Pollock & Dunnigan, P.C., Bridgeport, CT.
 
 
 2
 APPEARING FOR APPELLEE: Margaret A. Keene, Leboeuf, Lamb, Greene & McRae, LLP, New York, NY.
 
 
 3
 D.Conn.
 
 
 4
 AFFIRMED.
 
 
 5
 Before LEVAL and CALABRESI, Circuit Judges, and SPATT, District Judge.*
 
 
 6
 This cause came on to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued by counsel.
 
 
 7
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.
 
 
 8
 Plaintiffs-appellants, Brooke, Terrence and Brian Quinn, appeal from the district court's grant of summary judgment to defendant, Federal Kemper Life Assurance Company ("Kemper") denying plaintiffs' claim for benefits under a life insurance policy issued by Kemper. The Quinns' claim arises from a preferred[1] life insurance policy issued to Albert Quinn on or about April 3, 1989, naming plaintiffs as beneficiaries.
 
 
 9
 In March of 1989, Albert Quinn completed a life insurance application. A medical examiner read the questions on the medical portion of the form to Quinn and recorded his answers. In response to question number 2a, which reads, "Have you ever had or been treated for [h]igh blood pressure, chest pain, rheumatic fever, a heart condition, a heart murmur, stroke or other disease of the heart or blood vessels?" Quinn responded, no. To question 6c, which reads, "Have you [e]ver been under observation or received treatment in any hospital or other institution?" Quinn also answered, no.
 
 
 10
 After the medical examiner completed the application, Quinn signed the form. Above the signature line, in bold print, the application reads:
 
 
 11
 All statements and answers to the foregoing questions are, to the best of my knowledge and belief, complete and true. I agree (a) that they shall form a part of my application; (b) that they shall be subject to the terms of the agreement found in the application; and, (c) that they shall become a part of any policy based on my application.
 
 
 12
 On July 29, 1989, Quinn died of a heart attack. Plaintiffs, as beneficiaries of the policy, made a timely claim for benefits. Upon investigation, Kemper learned that Albert Quinn had experienced a myocardial infarction, or heart attack, in 1982 and was hospitalized for ten days as a result. Because he failed to disclose these facts in his application, Kemper refused to pay benefits on the policy.
 
 
 13
 Plaintiffs filed suit to compel Kemper to pay benefits. Kemper moved for summary judgment claiming that the insured made knowing misrepresentations on his application for insurance which were material to Kemper's decision to issue a preferred policy and that therefore the policy was void. The district court agreed, finding that, as a matter of law, Quinn's answers to questions 2a and 6c constituted material misrepresentations, and therefore granted Kemper's motion.
 
 
 14
 Appellants contend that the district court erred because (1) a jury could find that the phrases "chest pain," "heart condition" or "other disease of the heart" do not encompass a heart attack; (2) Quinn misunderstood the question about prior hospitalization when read to him to refer only to the last five years and therefore he did not make a knowing misrepresentation; and (3) even if the answers constitute knowing misrepresentations their materiality is a question of fact, precluding summary judgment. None of these arguments has merit.
 
 
 15
 Appellants' argument that one who has had a heart attack may truthfully state that he has never had or been treated for chest pain, a heart condition or other disease of the heart is contrary to the common understanding of these terms.
 
 
 16
 Appellants' claim that Quinn's misrepresentation regarding his hospitalization history was innocently, rather than knowingly, made cannot be supported by Connecticut law.
 
 
 17
 Under Connecticut law ... a person may not claim that a misrepresentation is 'innocent' solely because the person failed to read the application before signing it. The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written. Thus, at least in Connecticut, an applicant for insurance has the affirmative duty to inform himself of the content of the application signed by him, under penalty of being bound by the representations as recorded therein.
 
 
 18
 Pinette v. Assurance Co. of America, 52 F.3d 407, 410 (2d Cir.1995) (citations and internal quotations omitted). Thus, Quinn's misrepresentation about his prior hospital stay was knowingly made as a matter of law.
 
 
 19
 Equally unavailing is appellants' contention that the materiality of Quinn's misrepresentations was a question of fact which should preclude summary judgment. "The test of materiality is in the effect which the knowledge of the fact in question would have on the making of the contract.... Matters made the subject of special inquiry are deemed conclusively material." State Bank & Trust Co. v. Connecticut General Life Ins. Co., 145 A. 565, 566 (Conn.1929)(quoting Vance on Insurance, 257). Here, it is undisputed that Kemper does not issue life insurance policies at preferred rates to people who, like Quinn, have a history of coronary artery disease. As Kemper would not have issued the preferred policy to Albert Quinn had he answered the questions truthfully, the misrepresentations were material as a matter of law. See Wexler v. Mutual Life Ins. Co., 10 Conn. L. Trib. No. 35 at 12 (Conn.Super. Ct. April 24, 1984)("Under Connecticut law a knowing misrepresentation in an application for life ... insurance concerning the applicant's prior medical history is material to the risk ... as a matter of law.").
 
 
 20
 The fact that Quinn's insurance was a "medical" policy (meaning that Quinn had to submit to a physical examination and that Kemper had the right to obtain Quinn's medical records) does not change this conclusion. See Variety Homes, Inc. v. Postal Life Ins. Co., 287 F.2d 320, 323 (2d Cir.1961)(insurer is entitled to reasonably rely on insured's statements in application and need not perform independent investigation of the truthfulness of the representations); Wexler, 10 Conn L. Trib. No. 35 at 13-14 (finding that fact that insurance policy was a medical policy did not alter the conclusion that misrepresentations regarding the insured's medical history were material as a matter of law).
 
 
 21
 The decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Arthur Spatt, United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 Kemper issues life insurance policies in three premium categories: preferred, standard and rated. Preferred policies have the lowest premium rates